## THE STATE OF NEW JERSEY, PLAINTIFF IN ERROR, v. FREDERICK HART, DEFENDANT IN ERROR.

Argued June 21, 1916—Decided June 18, 1917.

1. At common law, a bill of exceptions was not allowable in a criminal case. Error was assignable only upon the record.
2. The right of review for trial errors, on bills of exceptions, in criminal cases, is given by the statute of this state, solely to the defendant.
3. A writ of error will not lie in favor of the state, to review a judgment of acquittal.
4. Where an acquittal is had in a court of competent jurisdiction, having jurisdiction of the person and the crime with which he is charged, it is an acquittal within the meaning of the provisions of article 1, paragraph 10, of the state constitution, even though such acquittal was the product of trial errors.

On error to the Supreme Court, whose opinion is reported in 88 *N. J. L.* 48.

For the plaintiff in error, *Martin P. Devlin.*

For the defendant in error, *William J. Crossley.*

The opinion of the court was delivered by

KALISCH, J. The defendant in error was indicted for seduction. On his trial, in the Quarter Sessions Court of Mercer county, the trial judge directed the jury to acquit him. The state sued out a writ of error in the Supreme Court to the Court of Quarter Sessions, which writ was dismissed by the Supreme Court upon the ground that in order for the state to secure a review of a trial error, it must be able to have a bill of exceptions and a writ of error based thereon to remove the case to that court, and since the statute makes no such provision, and there being no such practice at common law as a writ of error in favor of the crown after an acquittal on the merits, the writ was improperly sued out.

The state now brings the record up for review before us on a writ of error sued out of this court to the Supreme Court.

At common.law a bill of exceptions was not allowable in a criminal case. .Error was assignable only upon the record.

The bill of exceptions had its origin in the statute *Westm.* 2; 13 *Edw. I., c.* 31.

Tidd, in volume 2 on *Practice,* page 862, in commenting on this statute, says:. "This statute extends to *inferior* courts; and to trials at bar, as well as those at *nisi prius;* but it has been doubted whether the statute extends to criminal cases."

In *King* v. *Archbishop of York, Willes Rep.* 533, Lord Chief Justice Willes, in discussing the scope of chapter 31 ·(on *p.* 535), says: "My brother Abney cited 2 *Inst.* 424, and *Savile* 2, where it was holden that the statute of *Westm.* 2, *c.* 30, concerning *nisi prius* does not extend to the king; and that although the act is general, yet a *nisi prius* cannot be granted where the king is a party, or where the matter toucheth the right of the king, without a special warrant from the king or the consent of the attorney-general. He said, likewise, that *c.* 31 of the same act, concerning bills of exceptions, was never thought to extend to the crown. And he mentioned some cases where such pleas had been denied; and said that he thought that the *stat.* 9 *An. c.* 20, extending this statute to writs of *mandamus* &c. rather strengthened the objection."

·In 2 *Inst.* 427, Lord Coke says: "This act doth extend as well to the demandant or plaintiff as to the tenant or defendant in all actions, real, personal or mixed." And in *King* v. *The Inhabitants of Preston, Rep. temp. Hardw.* 249, Lord Hardwicke (on *p.* 251), on an information in the Court of Exchequer, said that when he was attorney-general he had known a bill of exceptions allowed, but then, said his Lordship, "they are properly civil suits for the king's debt," &c. But a bill of exception cannot be allowed by the justices of peace at the Quarter Sessions on the hearing of an appeal against an order of removal.

In the case of *Sir Henry Vane,* 1 *Lev.* 68; *Kel.* 15; *Sid.* 85, who was tried for high treason, the court refused to seal

a bill of exceptions, because they said criminal cases were not within the statute, but only actions between party and party. This matter is fully discussed in a learned and exhaustive note by Mr. Evans in volume 3 of *Evan's Statutes,* page 341, &c., edition of 1829. On *p.* 342, the learned commentator says: "From the language of the statute itself, I certainly should not infer its application to criminal cases. * * * The general feeling of the profession upon the subject is most strongly evinced by the fact of no such bill of exceptions having been tendered for a very long period of time, although many important questions of criminal law have been discussed with great warmth, and with strong feelings of opposition to the opinions of the court of which the much-agitated question of the functions of the jury in cases of libel previous to the statute of George III., is perhaps the most prominent instance."

Chitty, in volume 1 of his excellent treatise on *Criminal Law* (*622), says: "When an exception is made by any party to a witness which is overruled by the court, the opposite side, have, at least in civil proceedings, the power of appealing from his decision, by tendering a bill of exceptions. This document the judge must, in civil cases, seal by virtue of 13 *Edw. I., c.* 31, and it will operate like a writ of error. But it seems to be the better opinion that this provision does not extend to any criminal case; and is certainly inadmissible on indictments for treason and felony. It has indeed been allowed on an indictment for a misdemeanor, but the propriety of this allowance has been disputed."

In *Alleyne's Case, Dears. Cr. Cas. Res.* 505 (1852–1856), Lord Campbell, C. J. (on *p.* 509), says: "A bill of exceptions could not lie for the statute of *Westm.* 2 is confined to civil cases."

Under the ancient English practice trial errors in criminal cases were reviewable by the taking of a special verdict or by a case reserved which is illustrated by the following instances:

In *King v. Hodgson et al.,* 1 *Leach Cr. Cas.* 6, a case decided in 1730, there was a special verdict upon an indictment against several defendants, jointly indicted, tried and con-

victed. The question was whether under the evidence they were all equally guilty. The report of the case states: "In order to avoid the expense. which attends the drawing and arguing a special verdict, the counsel agreed to submit the point to the consideration of the judges in the shape of a reserved case."

In *Reg.* v. *Bernard,* 1 *F. & F. Cr. Cas.* 240, 253, the defendant's attorney submitted seven legal questions to the trial court to be reserved, the seventh of which was concerning a certain letter which was claimed to have been improperly received in evidence, upon which Lord Campbell, C. J., sitting with Pollock. C. B Erle, J., and Crowder, J., and a jury, remarked: "There appears to be no objection to reserving any of those points except the seventh; but that point, as you must be aware, was argued before us, and we were unanimously of the opinion that the letter was admissible. All other points which you have raised are very fit indeed for the consideration of the fifteen judges."

And so it was held by the courts of the State of New York prior to the passage of a statute providing for bills of exceptions in criminal cases, that no bill of exceptions could be taken in a criminal case. *People* v. *Holbrook,* 13 *Johns. Rep.* 90; *People* v. *Vermilyea,* 7 *Cow.* 108; *Ex parte Barker, Id.* 143.

A consideration of the history of the origin and development of bills of exceptions in this state is highly important as bearing upon the question as to what the common law was on the subject prior to the constitution of 1776.

The first act relating to bills of exceptions was passed in 1797, and is to be found in *Pat. L., p.* 245, entitled "An act directing bills of exceptions to be sealed" This act though somewhat narrower in its terms than the English Parent act of *Westm.* 2, in that the New Jersey statute confines its operation to causes where a writ of error lies to a higher court, whereas the English statute is general in that regard. In all other respects, however, the act of 1797 is, in substance, a copy of the earlier English statute.

An examination of the early reports of criminal cases in this state shows an absence of bills of exceptions in such cases, until 1849, when, in *West* v. *State,* 22 *N. J. L.* 212, for the first time, manifestly, in a criminal case under review, with a return of the record came a bill of exceptions, which the reporter says was signed by virtue of the act of 1848.

Looking into the practice which prevailed in criminal cases in this state prior to the passage of the act of 1848, we find that it was analogous to the practice which prevailed in England before the Revolution of 1776, so far as it was consonant with our changed form of government. The practice was for the trial judge or court to take a special verdict, reserving the questions of law for the opinion of the judges, or to certify a stated case, asking for an advisory opinion. See *State* v. *Guild,* 10 *N. J. L.* 175.

That the consensus of opinion of both bench and bar of this state was that the act of 1797 did not provide for bills of exceptions in criminal cases is not only confirmed by the practice above alluded to, but also by the statute of 1848 (*Pamph. L., p.* 226) entitled "An act directing bills of exceptions to be sealed in certain criminal cases."

Section 1 of this act declares "that the act entitled 'An act directing bills of exceptions to be sealed,' passed March 7th, 1797, and each and every of the provisions thereof shall be taken, deemed, and adjudged to extend to trials of indictment for crimes and misdemeanors, which by law are punishable by imprisonment at hard labor."

Section 2 of the act provides for the taking of an exception on the trial of an indictment for any crime or misdemeanor included within the provisions of the first section of the act, and for the return of the bills of exceptions with a writ of error.

In 1855 the legislature by an act entitled "A supplement to an act, approved April the sixteenth, 1846, and entitled 'An act regulating proceedings and trials in criminal cases,'" declared that the act passed in 1797 shall be taken, deemed and adjudged to extend to trials of indictment for treason, murder or other crimes punishable with death, misprision of treason,

manslaughter, sodomy, rape, arson, burglary, robbery, forgery, perjury and subornation of perjury, and in express terms repealed the act of 1848. *Pamph. L.* 1855, *p.* 648.

It is obvious that the effect of this declaration of the legislature, and the repeal of the act of 1848, precluded the taking of bills of exceptions in cases of misdemeanor and not mentioned in the above category of crimes.

In 1863 the legislature, after declaring that the act of 1797 shall apply to criminal cases, extended the right to a bill of exceptions on the trial of any indictment for any crime or misdemeanor. *Pamph. L.* 1863, *p.* 311; *Nix. Dig., p.* 228, ¶¶ 49, 50.

By section 90 of the Criminal Practice act of the Revision of 1877, page 284, it is provided that sections 242, 243, 244, 245 and 246 of the act entitled "An act to regulate the practice of courts of law," shall be deemed, taken and adjudged to extend to trials of indictment for crimes and misdemeanors which by law are punishable by imprisonment at hard labor. This, obviously, left all cases of misdemeanor punishable by fine only or by imprisonment only, or by fine and imprisonment, without the benefit of bills of exceptions. But, by a later statute found in the Revision of 1877, page 1298, section 90 of the Criminal Practice act was repealed, and section 91 of the same act was amended with the result that bills of exceptions for trial errors are allowable "on the trial of any indictment in any court of this state, for any crime or misdemeanor."

It is to be noted that the right of review for trial errors, on bills of exceptions, in criminal cases, is given by the statute of this state, solely to the defendant.

These statutes were enacted after the adoption of the constitution of 1844. They essentially broadened the operation of a writ of error in favor of a person convicted of crime.

In view of the constitutional provision (article 1, paragraph 10) that no person shall, after an acquittal, be tried for the same offence, it is clear that it is not within the constitutional power of legislative authority to confer by statute any such right on the state.

It is no answer to the prosecutor's claim to the right to review a trial error to say that because the crown at common law was not entitled to a bill of exceptions, in a criminal case, therefore, no writ of error would lie in its behalf. For it has already been sufficiently pointed out that bills of exceptions, in criminal cases, were unknown to the common law, and to the criminal procedure of this state until the statute of 1848. But, as to the right of the crown to a writ of error, at common law, for a trial error, in a criminal case, there seems to be some diversity of opinion. It is the consensus of judicial opinion that the sole function of a writ of error at common law was to bring up for review errors appearing on the face of the record. In *Rex* v. *Wilkes, 4 Burr.* 2527, 2550, Lord Mansfield, *inter alia,* said: "Till the 3rd of Queen Ann, a writ of error in any criminal case was held to be merely *ex gratia.*" * * * "But in the 3rd of Queen Ann, ten judges were of the opinion 'that in all cases under treason and felony, a writ of error was not merely of grace, but ought to be granted.'" "It cannot issue now, without a fiat from the attorney-general; who always examines whether it be sought merely for delay, or upon a probable error. * * * In a *misdemeanor,* if there be probable cause, it ought not to be denied; this court would order the attorney-general to grant his fiat. But be the error ever so manifest in treason or felony, the king's pleasure to deny the writ is conclusive."

The head-note to the case *Re Pigott,* decided in 1868 (11 *Cox Cr. Cas.* 311), reads: "The granting of a writ of error is part of the prerogative of the crown. If, therefore, the attorney-general of England, or the Lord Lieutenant of Ireland refuse to grant it, the Lord Chancellor has no jurisdiction to review that decision."

Bishop, in the second edition of his valuable treatise on *Criminal Procedure,* volume 1, section 1191, in commenting on the English practice relating to the writ of error, says: "It never was granted except when the king, from justice when there really was error, or from favor where there was no error, was willing the judgment should be reversed. After writ of error granted, the attorney-general never made any

opposition because either he had certified there was error and then he could not argue against his own certificate; or the crown meant to show favor, and then he had orders not to oppose. The king, who alone was concerned as prosecutor, and who had the absolute power of pardon, having thus expressed his willingness that the judgment should be reversed, the Court of King's Bench reversed it upon very slight and trivial objections, which could not have prevailed if any opposition had been made, or if the precedent had been of any consequence."

But enough has been said to demonstrate that a writ of error, even in a case of misdemeanor, did not, under the English practice, issue, as a matter of course, upon the application of a convicted defendant, and that the writ was resorted to by the crown to show favor to the convicted person and to bring about a reversal of the judgment against him. Singularly enough it does not appear that the writ was ever used by the attorney-general to reverse a judgment of acquittal, until the cases of *Regina* v. *Mills*, 10 *Cl. & F.* 534, decided in 1843; *Regina* v. *Chadwick*, 11 *Q. B.* 205, decided in 1846, and *Regina* v. *Houston*, 2 *Craw. & Dix.* 191, the latter case being a judgment on demurrer in favor of the defendant. In none of these cases was the question raised as to the right of the attorney-general to take the writ. And because of this situation, counsel for the state argues that it must be accepted as a fact that the right of the crown to take the writ in case of an acquittal is indisputable.

To a similar contention of counsel made in *People* v. *Corning*, 2 *N. Y.* 9, dealing with the precise question under discussion, the Court of Appeals, through Mr. Justice Bronson (on *p.* 17), said: "The weight of authority seems to be against the right of the government to bring error in a criminal case. The absence of any precedent for it, either here or in England, within a very recent period, fully counterbalances, if it does not outweigh the fact, that the right has lately been exercised in a few instances without objection. And in three or four states, where the question has been made, the courts have decided that the right does not exist."

But even if it be assumed that it was the practice in England for the attorney-general to take a writ of error in a criminal case, where the defendant was acquitted, we must not overlook the fact that this power so exercised sprung from a governmental policy to carry out the royal prerogative of the king and was either to favor or oppress a subject. Such a policy could not, consistently, with our free form of government have become imbedded in the administration of law in this state. And while we recognize in full measure the functions of a writ of error as they existed at common law up to the time of the adoption of the constitution of 1776, the procedure relating thereto is of statutory regulation.

Whatever doubt may exist whether the king under the common law could have a writ of error in a criminal case after judgment of acquittal of the defendant, it has been, as declared in the opinion of the Supreme Court, the unquestioned practice in this state recognized and acquiesced in by bench and bar, that no such writ would lie in favor of the state, to review a judgment of acquittal.

Since the constitution declares that no person shall, after an acquittal, be tried for the same offence, no legislation can be constitutionally enacted giving the right of review in cases where there has been an acquittal.

Counsel for the state argues that the word "acquittal" in the constitution signifies legal acquittal, and that where it appears that a trial error has occurred which led to an acquittal, it cannot be properly said that there was an acquittal within the meaning of the constitutional sense of the word.

To adopt this view would lead to a nullification of the benefit of the constitutional provision. The obvious design of the framers of the constitution was to prevent oppression.

Where an acquittal is had in a court of competent jurisdiction, having jurisdiction of the person and the crime with which he is charged, it is an acquittal within the meaning of the constitutional provision, even though such acquittal was the product of trial errors.

In the case of *State* v. *Meyer,* 65 *N. J. L.* 233, the defendant was convicted in the Court of Quarter Sessions, and took

a writ of error to the Supreme Court, where the judgment of the Quarter Sessions was reversed. Thereupon the prosecutor of the pleas sued out a writ of error from this court to reverse the judgment of the Supreme Court, and the defendant moved to dismiss the writ on the ground that the state was not entitled to a writ of error in a criminal case. This court justified the propriety of the taking of the writ by the state, by virtue of an act of 1799, "that errors happening in the Supreme Court of this state shall be heard, rectified and determined by the Court of Appeals in the last resort in all cases of law."

It is to be observed that the defendant in that case was convicted in the court of first instance, and that it was an intermediate court, whose action was subject to review by this court, which reversed the judgment. This case, is, therefore, no authority for the proposition advanced by counsel for the state that a writ of error may be prosecuted by the state where an acquittal is the result of misdirection by the court.

For the reasons given, the judgment of the Supreme Court, dismissing the writ of error, is affirmed.

*For affirmance* — THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 12.

*For reversal*—None.