## STATE *v.* ANNA FELCH.

### February Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 19, 1918.

*Criminal Law—Exceptions by State—Double Jeopardy—Federal Constitution—State Constitution—Due Process of Law—Privileges and Immunities of Citizens—G. L. 2598 Constitutional—Evidence—Cross-examination—Harmless Error—Opinion Evidence—Improper Conduct of Counsel—Offering Evidence Already Excluded—Improper Argument—Exceptions by State Before Final Judgment—Court's Discretion—Presumption Favoring Court Below.*

In order to justify an exception by the State in a criminal case, it must be authorized by an express and valid statute.

G. L. 2598 gives a right of exception to the State in a criminal case equal in all respects to that possessed by the respondent.

The provisions of the Fifth Amendment of the Federal Constitution, wherein double jeopardy is prohibited, are not intended to limit the powers of the state governments in respect to their own people, but merely operate as restrictions upon Federal action.

The "due process of law" referred to in the Fourteenth Amendment of the Federal Constitution, wherein restriction is imposed upon state action, is due process according to the Constitution and laws of the particular state involved, provided the fundamental principles of our civil and political institutions are not violated.

G. L. 2598 does not abridge the privileges or immunities of United States citizenship in violation of the Fourteenth Amendment simply because it offends the double jeopardy provision of the Fifth Amendment.

Due process of law, which is the law of the land, is not immutable, but changes from time to time, and is a matter of legislation, provided that express constitutional provisions and the fundamental individual rights of life, liberty and property are not infringed or impaired.

G. L. 2598 is not in violation of our Bill of Rights, Art. 10, nor of the "due process" provision of the Fourteenth Amendment of the Federal Constitution.

Under the Constitution of Vermont, the first jeopardy of a respondent in a criminal case continues until a result free from error is attained.

Where no possible harm could have been done to the State by allowing an improper question to a witness on cross-examination, an exception thereto will not be sustained.

Where the facts are of such a character as to be incapable of being presented with their proper force to any one but the observer himself, he is allowed, to a certain extent, to give his conclusion, judgment or opinion.

In the prosecution of a woman for the murder of her husband, acting in concert with her lover, it was error as to the State, though not necessarily reversible error, to exclude the testimony of a witness who saw the respondent, her husband and her lover at a social gathering, concerning the expression of her face and eyes when she looked at her lover.

Under the circumstances, it was reversible error for the respondent's counsel to deliberately persist in offering evidence as to, a man whose hand had a little finger gone or useless, on the theory that there was testimony that the rifle used showed marks as if three fingers had grasped it, after the court had excluded similar evidence.

Where the respondent had given three statements which had been taken by a stenographer, two of them at statutory inquests, argument by her counsel that she had been "pounded and pommeled" by the State at the various inquests was not reversible error; counsel explaining, on objection, that he only used the words figuratively, and the offensive terms having been sufficiently withdrawn.

Under the circumstances, it was proper for the respondent's counsel to state in argument that she had testified knowing that she would be confronted by testimony taken stenographically elsewhere.

Where the State took exceptions, and there was a verdict of acquittal, the court properly refused to render judgment on the verdict, because G. L. 2598 expressly authorizes the court, in its discretion, to pass the case to the Supreme Court on the State's exceptions before final judgment; and, the record not showing that the court did not rule on this question as matter of discretion, it will be taken that it did.

INDICTMENT FOR MURDER. Plea, not guilty. Trial by jury at the June Term, 1917, Orange County, *Butler,* J., presiding. Verdict, not guilty. The State seasonably objected and excepted to certain rulings of the court in the admission of evidence, to certain rulings of the court in the exclusion of evidence, and to certain statements made by respondent's counsel in argument to the jury, which exceptions were allowed and the case passed to the Supreme Court before final judgment. The respondent seasonably objected and excepted to the allowance of any exceptions by the State to rulings of the court, on the ground that the law allowing exceptions in the trial of criminal causes by the State is unconstitutional and void. The respondent, after verdict, moved for judgment upon the verdict of not guilty, and excepted to the refusal of the court to render a judgment upon the verdict. The opinion states the other facts in the case.

*Herbert G. Barber,* Attorney General, and *John C. Sherburne,* State's Attorney, for the State.

*Richard A. Hoar, Ellen M. M. Hoar,* and *Alland G. Fay* for the respondent.

It is well settled that, by the common law, a person could not be twice put in jeopardy for the same offence. *Fix* v. *Ohio,* 5 How. 410; *Ex parte Bornee,* 58 L. R. A. (N. S.) 1093; *People* v. *Webb,* 38 Cal. 467; *United States* v. *Sanger,* 144 U. S. 310; *People ex rel. Hodson* v. *Miner* (Ill.) 19 L. R. A. 342; *Mitchell* v. *State,* 42 Ohio St. 383; *State* v. *Van Horton,* 26 Iowa 402; *Commonwealth* v. *Fitzpatrick,* 121 Pa. St. 109; *Whitten* v. *State,* 61 Miss. 717; *Whitmore* v. *State,* 43 Ark. 271; *State* v. *Anderson,* 3 Smedes & M. 751; *Robinson* v. *Commonwealth,* 88 Kentucky 386; *State* v. *Rook,* 61 Kan. 382; *Pizano* v. *State,* 20 Texas App. 139; *State* v. *Webb,* 48 Cal. 323; *State* v. *Benham,* 7 Conn. 414.

That the common law was in force and became a part of the Constitution of Vermont has been recognized by this Court. *State* v. *Hobbs & Strong,* 2 Tyler 380; *Spalding* v. *Preston,* 21 Vt. 9; *State* v. *Conlin,* 27 Vt. 318; *LeBarron* v. *LeBarron,* 35 Vt. 364; *State* v. *Peterson,* 41 Vt. 504; *State* v. *Phair,* 48 Vt. 366; *Quinn* v. *Halbert,* 52 Vt. 353; *In re Marron,* 60 Vt. 199; *State* v. *Burpee,* 65 Vt. 1, p. 11; *State* v. *Hodgson,* 66 Vt. 134; *State* v. *Dyer,* 67 Vt. 690; *State* v. *Brewster,* 70 Vt. 341; *State* v. *LaFor-*

*rest,* 71 Vt. 311; *State* v. *Slamon,* 73 Vt. 212; *State* v. *Stimpson,* 78 Vt. 124; *Clement* v. *Graham,* 78 Vt. 290; *In re Lydia Ann Allen,* 82 Vt. 365.

This Court has recognized that this principal of no second jeopardy was, at least, a part of the "law of the land," and has always enforced it whenever called upon to do so. If this Court has not said in so many words that this principle was embodied in our Constitution, it is because it has never been questioned before. Whenever the plea has been made, and the court has found, that a person had been either acquitted or convicted of the same offence, it has enforced the principle and discharged the respondent. *State* v. *Damon,* 2 Tyler 387; *State* v. *Smith,* 43 Vt. 324; *State* v. *Whipple,* 57 Vt. 637; *State* v. *Burpee,* 65 Vt. 1; *State* v. *Bradley,* 67 Vt. 465; *State* v. *Emery,* 68 Vt. 109; *State* v. *Bruce,* 68 Vt. 183.

Where the trial proceeds to a verdict, either of guilty or not guilty, then the respondent has been in jeopardy and the rule applies that he cannot be placed in jeopardy a second time, without his consent or some act on his part. *State* v. *Emery,* 59 Vt. 84; *State* v. *Champeau,* 52 Vt. 313; *State* v. *Whipple,* 57 Vt. 637; *State* v. *Bradley,* 67 Vt. 465; *State* v. *Damon,* 2 Tyler 387; *State* v. *Locklin,* 59 Vt. 654; *Commonwealth* v. *Murphy,* 174 Mass. 369; *Mitchell* v. *State,* 42 Ohio St. 383; *Commonwealth* v. *Fitzpatrick,* 121 Pa. St. 109; *Whitten* v. *State,* 61 Miss. 717; *Whitmore* v. *State,* 43 Ark. 271; *Robinson* v. *Commonwealth,* 88 Ky. 386; *Pizano* v. *State,* 20 Texas App. 139; *The People* v. *Webb,* 38 Cal. 467; *State* v. *Webb,* 48 Cal. 323.

POWERS, J. A jury acquitted this respondent of the charge of murder, and the State brings the case here for review on exceptions taken pursuant to G. L. 2598. The respondent also brings up an exception to the refusal of the trial court to render judgment on the verdict and order her discharge and she also files in this Court a motion to dismiss the exceptions of the State insisting, first, that by proper construction the statute referred to only gives the State the right to except to such preliminary rulings as may be made before the jury is sworn; and, second, that, if not so construed, the statute provides for putting a respondent in second jeopardy and is therefore unconstitutional and void.

We accept as unquestionably sound the claim of the respondent that in order to justify an exception by the State in a criminal case, it must be authorized by an express and valid statute. That the statute here in question undertakes to authorize such exceptions we have no doubt. It must be admitted that its language is not happily chosen, and that its true meaning is not at first reading entirely clear. But we cannot believe that it was the legislative purpose to provide for an exception to rulings upon demurrers and like questions alone. There is little reason or excuse for such a statute, and if that was all that was intended, it would have been an easy matter to have made it manifest. It is much more reasonable to suppose that the Legislature intended to provide a right of exception to the State equal in all respects to that possessed by the respondent. The language used indicates this. The second section provides that this Court shall hear the questions raised and render final judgment, or remand the case for "further trial," or other proceedings. The respondent insists that this expression sustains her interpretation of the statute. To this we cannot agree. If the Legislature had intended to limit the State to rulings preceding the empanelling and swearing of the jury, it naturally would have said "or remand the case for trial"; for, according to her interpretation, the actual trial had not begun when the exception was taken. Evidently the theory on which this statute is drawn is that the proceedings on remand would be a continuation of the trial already had, and not another new trial in any proper sense, though often spoken of in that way. We hold, then, that the terms of this statute rightly understood, authorize exceptions by the State, reserving just such questions as are here argued; and all others arising during the course of the trial.

On considering the constitutionality of the statute, we shall omit reference to statutes merely giving the prosecution the right of exception to such preliminary rulings as we have referred to, and shall pay no attention to statutes giving the prosecution the right of exception to other questions for the sole purpose of settling the law for future guidance, as decisions under them will afford us no assistance in the solution of the questions here presented. We shall assume, though it has been doubted (*State v. Lee,* 65 Conn. 265, 30 Atl. 1110, 27 L. R. A. 498, 48 Am. St. Rep. 202; *United States v. Sanges,* 144 U. S. 310, 12 Sup. Ct. 609, 36 L. ed. 445), that it was the well-recognized doctrine of

the ancient common law that no man could be twice put in jeopardy for the same offence. We are mindful of the fact that this rule was deemed of such importance that it was given a place in Magna Charta, and that it was regarded so vital to the maintenance of the Anglo-Saxon concept of individual liberty that it was made a part of the Constitution of the United States by the Fifth Amendment, and in one form or another has found expression in the Constitutions of a majority of the states of the Union. Under such constitutional provisions it has been consistently and uniformly held that any legislative attempt to confer upon the state the right of exception for the correction of trial errors was futile.

A statute of California attempted to give the state a right of appeal to the Supreme Court on all questions of law arising in prosecutions for felonies. In *People* v. *Webb,* 38 Cal. 467, it was held that the respondent's acquittal in the court below was final, and that he could not again be put in jeopardy. A statute of Illinois attempted to give the complainant a right of appeal in prosecutions for illegal fishing. In *People* v. *Miner,* 144 Ill. 308, 33 N. E. 40, 19 L. R. A. 342, it was held that the respondent's acquittal below was a complete protection from another trial and that the statute was unconstitutional. In West Virginia an act of the Legislature attempted to give the state a right of appeal in criminal cases, but it was held in *Ex parte Bornee,* 76 W. Va. 360, 85 S. E. 529, L. R. A. 1915 F, 1093, that the act was unconstitutional.

By the provisions of a certain military order regularly promulgated for the government of the Philippine Islands, the right of the government to appeal from a judgment of acquittal in a court of first instance was recognized. But in *Kepner* v. *United States,* 195 U. S. 100, 24 Sup. Ct. 797, 49 L. ed. 114, 1 Ann. Cas. 655, it was held that this was repugnant to a provision that "no person for the same offence shall be twice put in jeopardy of punishment," contained in an act of Congress subsequently passed for the administration of the affairs of the Islands, and was repealed by it. Though the question was not directly involved, it was said in *State* v. *Hart,* 90 N. J. Law 261, 101 Atl. 278, L. R. A. 1917 F, 985, that "it is clear that it is not within the constitutional power of legislative authority to confer by statute" upon the state the right of exception in criminal cases.

The foregoing views seem to be accepted as sound by one or two other cases not now at hand and are generally approved by text-writers and commentators. However, the theory that the jeopardy involved is single and continuous until a result is reached that is free from error is not without its defenders. See *State* v. *Lee, supra,* and dissenting opinion by Holmes, J., in *Kepner* v. *United States, supra.* Though not especially relied upon by the respondent, it is not improper in view of the importance of the case, to make brief reference to the Constitution of the United States. The provisions of the Fifth Amendment to that document, wherein double jeopardy is prohibited, are not intended to limit the powers of the state governments in respect to their own people, but merely operate as restraints upon Federal action. *Ex parte Spies,* 123 U. S. 131, 8 Sup. Ct. 31, 31 L. ed. 81; *Hunter* v. *Pittsburg,* 207 U. S. 161, 28 Sup. Ct. 40, 52 L. ed. 151. And the due process of law referred to in the Fourteenth Amendment, wherein restraint is imposed upon state action, is due process according to the Constitution and laws of the particular state involved, provided the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions" are not violated. *Ex parte Kemmler,* 136 U. S. 436, 10 Sup. Ct. 930, 34 L. ed. 519. It cannot be said that the act in question abridges the privileges or immunities of United States citizenship in violation of the terms of the Fourteenth Amendment simply because it offends one of the specific provisions of the Fifth Amendment. Although it has been vigorously asserted that the rights specified in the first eight amendments are among the privileges and immunities protected by the Fourteenth Amendment, and although this view has been defended by many distinguished jurists, including several Justices of the Federal Supreme Court, that Court holds otherwise and asserts that it is the character of the right claimed, whether specified as above or not, that is controlling. *Maxwell* v. *Dow,* 176 U. S. 581, 20 Sup. Ct. 448, 494, 44 L. ed. 597.

It is interesting to note in this connection that the question whether double jeopardy amounts to want of due process under the Federal Constitution was suggested and its importance recognized by Mr. Justice Harlan in *Dreyer* v. *Illinois,* 187 U. S. 71, 23 Sup. Ct. 28, 47 L. ed. 79, but was left undecided. It is also of interest to note that in *Ex parte Ulrich,* (D. C.) 42 Fed. 587, it was held by Judge Philips that, inasmuch as it is a principle

of the common law that no one shall be twice placed in jeopardy for the same offence, the trial and commitment of one who has already been partly tried and in legal effect acquitted of the same offence is depriving him of his liberty without due process of law, within the meaning of the Fourteenth Amendment. Of that decision, whatever else might be said, it is enough now to say that it was put wholly on common-law grounds, no statutory provision being involved; it arose in a state whose Constitution contains a provision against double jeopardy, and it is predicated upon a view of legal jeopardy wholly at variance with that of this Court as expressed in *State* v. *Champeau*, 52 Vt. 313, 36 Am. Rep. 754.

The case in hand does not require a discussion of the true meaning of the term "jeopardy," as used in the cases hereinbefore referred to. They were decided under provisions, either constitutional or statutory, expressly prohibiting a second jeopardy for the same offence. Our own Constitution contains no such provision. If the statute in question conflicts with any of its provisions, it is with the one contained in this clause of the 10th Article of the Bill of Rights: "Nor can any person be justly deprived of his liberty, except by the laws of the land." So it remains to consider whether the statute violates this provision or the due process provision of the Fourteenth Amendment to the Federal Constitution.

We have not far to look for a satisfactory and authoritative interpretation of our constitutional provision, for it received the painstaking attention of Judge Rowell in *State* v. *Stimpson*, 78 Vt. 124, 62 Atl. 14, 1 L. R. A. (N. S.) 1153, 6 Ann. Cas. 639. It was claimed in that case that this provision required prosecutions for common-law felonies to be by indictment, since, as the phrase in question was used in Magna Charta, it so required by the settled judicial construction in England prior to the adoption of our Constitution; and that, when we took the phrase, we took the construction with it. It was held otherwise, however, and the true meaning of the expression "the law of the land," and its legal equivalent "due process of law," was fully considered and discussed, and the conclusion was reached that the law of the land was not beyond the reach of the Legislature, that it varies from time to time according to legislative fiat, and that any statute otherwise valid that leaves unimpaired the fundamentals of individual rights of life, liberty, and property is not inconsistent therewith. And this is in entire accord with the

holdings of the Federal Supreme Court already referred to. The question before us, then, comes to this: Does this statute affect the respondent's fundamental rights? That it violates the rules of the ancient common law, that it infringes rights specified in Magna Charta, that it revises the policy of the State in criminal matters, and imparts something of a shock to a mind trained in the common law—these considerations are not controlling.

Due process of law—the law of the land—is not immutable. It changes from time to time. What due process requires in New Hampshire may not be necessary in Vermont. It is a matter of legislation, provided, always, that express constitutional provisions and the fundamental rights referred to are not infringed or impaired. *Brown* v. *New Jersey,* 175 U. S. 175, 20 Sup. Ct. 77, 44 L. ed. 119.

To determine just what those fundamental rights are—to enumerate or define them—would be a matter of some difficulty. It has never been attempted, and will not be now. *State* v. *Stimpson, supra,* shows that a presentment by indictment is not one; and *Brown* v. *New Jersey, supra,* shows that trial by jury even is not one. Of course we are now speaking of what due process requires, and leave out of consideration express constitutional requirements.

We now hold that relief from the vexation of a second trial is not one, and that the constitutional provisions under discussion are not infringed by the statute in question. This view is indirectly approved in *Ex parte Bornee, supra,* wherein attention is called to the fact that the Constitution of Virginia (which in this respect is like our own) does not prevent the passage of an act granting the state the right of appeal in criminal cases.

In *State* v. *Lee, supra,* a statutory right of appeal by the State in a criminal case was sustained, and though the Constitution of Connecticut does not in terms prohibit a second jeopardy, the case is treated as one involving this question, and is put upon the ground that the first jeopardy continues until a result free from error is attained.

The first exception briefed by the State was taken during the cross-examination of Mrs. McCormack, a witness for the State. The only ground on which the State then based its objection was that the question asked was not proper cross-examination. However this may have been, no possible harm could have been done by allowing the question, and this exception is not sustained.

It was the theory of the State that the respondent shot her husband acting in concert with Otis Williams, whose mistress she was, and that the killing was done to remove an obstacle to the enjoyment of their illicit relations. To show these relations, the State used various witnesses. Among these was L. T. Welch, a deputy sheriff. He testified that he saw the respondent, her husband, and Otis Williams together at a social at Waits River, that Mr. Felch was sitting between the respondent and Williams, that he saw the latter look at each other and smile, and that he saw them do this but once. He was then asked if he noticed the expression of the respondent's face and eyes, and this being excluded on objection, the State excepted. Standing alone, the importance of the rejected evidence does not seem very great; but that it was admissible under well recognized rules of evidence, seems clear. It is true that, as a general rule, witnesses are to state facts and not give their inferences or opinions; but this rule is subject to the exception that "where the facts are of such a character as to be incapable of being presented with their proper force to any one but the observer himself, so as to enable the triers to draw a correct or intelligent conclusion from them without the aid of the judgment or opinion of the witness who had the benefit of personal observation, he is allowed, to a certain extent, to add his conclusion, judgment or opinion." *Bates* v. *Sharon*, 45 Vt. 474.

Under this exception to the rule, it is permissible for a witness to testify that one's actions were strange and unnatural. *Fairchild* v. *Bascomb*, 35 Vt. 398; that a man appeared worried, *State* v. *Bradley*, 64 Vt. 466, 24 Atl. 1053; that a horse seemed tired, *State* v. *Ward*, 61 Vt. 153, 17 Atl. 483; that two persons were very intimate, *State* v. *Marsh*, 70 Vt. 288, 40 Atl. 836; that a person was domineering, *Mathewson* v. *Mathewson*, 81 Vt. 173, 69 Atl. 646, 18 L. R. A. (N. S.) 300; that there was nothing peculiar in one's talk or action, *In re Esterbrook's Will*, 83 Vt. 229, 75 Atl. 1; that certain questions were sensible, *In re Smith's Will*, 88 Vt. 259, 92 Atl. 223. So, too, it is held that a witness may testify that one spoke affectionately of another, *Appeal of Spencer*, 77 Conn. 638, 60 Atl. 289; that a respondent acted "sneaky," *Com.* v. *Borskey*, 214 Mass. 313, 101 N. E. 377; and that one was affectionate toward another, *McKee* v. *Nelson*, 4 Cow. (N. Y.) 355, 15 Am. Dec. 384. And speaking generally, an ordinary observer may be allowed to state that one appeared

pleased, angry, excited, friendly, insulting, affectionate, or the like. Elliott Ev. § 678. That the jury might have had the benefit of all there was to the incident, the excluded evidence should have been admitted. The raising of an eyebrow, the wave of a handkerchief, or the flash of an eye may give character to an act otherwise too trivial for notice. Without saying that it was of sufficient importance to require a reversal, we hold that it was error to exclude the offered evidence.

The respondent was a witness in her own behalf. In redirect examination she was asked if she knew anyone in the vicinity of her home on whose left hand the little finger was either stiff or missing. This question was based upon the theory that there was testimony in the case indicating that the rifle used by the murderer showed marks as if three fingers had grasped it. The State objected to the question asked the respondent, and after full discussion and deliberation it was excluded. Later on, when Otis Williams was under cross-examination, respondent's counsel asked him if his father, Asa Williams, was the man whose right hand or whose left hand had a little finger gone or useless. This was excluded and the State was allowed an exception to the asking of the question. That it is, in some circumstances, reversible error to persist in offering evidence that has been ruled out is shown by *Rudd* v. *Rounds,* 64 Vt. 432, 25 Atl. 438. The reason is obvious. Right or wrong, the ruling of the court is the law of the trial, and it is the duty of parties and counsel to accept it as such. This is recognized as the law everywhere. An offence of this kind, however, does not always require a reversal. Much depends upon the character and importance of the offered evidence and the good or bad faith of counsel, and each case must be judged on its own circumstances. That the action of counsel in the case before us was deliberate can hardly be doubted. When the matter was called to the attention of the respondent as above stated, the doubt of her counsel as to its admissibility is plainly evidenced by the fact that he cautioned her not to answer his question until the State had an opportunity to object. At the time this question was put to Otis Williams, he was first asked if there was any trouble with his father's hand. This was objected to. Then, without waiting for a ruling, the counsel asked the question in regard to Asa Williams above specified, which was more damaging to the State's case than the one first asked. Though the court

ruled that there was no evidence tending to connect a three-fingered man with the crime, there was enough in the cross-examination of State's Attorney Williams when he was on the stand, to lead the jury into a misconception of the importance of the fact embodied in the question. For, when asked if he noticed anything on the wooden part of the rifle that indicated that three fingers had grasped it, he replied that it "looked like finger marks"; but he turned the gun over to an expert. It would be quite natural for a jury to accept this as an admission that the marks were three in number, and thus the importance of identifying a three-fingered man suggested. In the circumstances, the conduct complained of was unwarrantable and prejudicial, and the exception is sustained.

It appears that on the Sunday following the homicide, the State's attorney had an interview with the respondent and that the conversation was then taken in shorthand. A transcript of this conversation was an exhibit in the case. On two other occasions she had given her statement at inquests held under the statute, and it had been recorded by a stenographer. In referring to these statements, counsel for the respondent said in argument that she had been "pounded and pommeled," by the State at the various inquests. Objection being made, counsel explained that he only used the words figuratively, and, if any question was made about it, would withdraw the statement; that he only meant that she had been subjected to the ordeal of three or four examinations taken down by a stenographer, before she testified in court, and that she knew, if she changed her story, her former statement would confront her. It being called to the attention of counsel that only one of her sworn statements had been introduced in evidence, he said he would limit his comments to that statement; but, when he again addressed the jury, he did not do so in express terms. Just what he said was that the respondent had testified, knowing that she would be confronted by testimony taken stenographically somewhere else. Assuming that this left that matter in such shape that the jury was warranted in keeping in mind that there were three outstanding sworn satements that could be used against her if she changed her story, we think the argument was, in the circumstances, free from reversible error. The offensive and unwarrantable terms used at the outset to characterize the vigilance of the State's attorney were sufficiently withdrawn. The fact that the re-

spondent had given three sworn statements, though two of them were at secret inquests, was a proper matter of comment, at least to the extent here indulged. To be sure, the statute penalizes the unlawful disclosure of the evidence so taken, but expressly provides that the stenographer may disclose it under order of the county court. Without doubt, if the interests of the State required, such order would be made; otherwise one of the principal benefits of the statute would be lost.

The respondent's exception to the refusal of the court to render judgment on the verdict cannot be sustained. The statute (G. L. 2598) expressly authorizes the court, in its discretion, to pass the case to this Court on the State's exceptions before final judgment. The record does not show that the court below did not rule on this point, as matter of discretion, so it will be taken that it did. *Slack* v. *Bragg*, 83 Vt. 404, 76 Atl. 148.

*Her motion to dismiss is overruled, for reasons already sufficiently set forth.*

*The exceptions of the State are sustained, and the case is remanded for retrial.*