STATE *v.* FRANK O'BRIEN.

Special Term at Rutland, November, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1934.

98

100

*Philip M. M. Phelps* for the respondent.

*Jack A. Crowley,* State's attorney, for the State.

Moulton, J.　　This respondent has been convicted of the unlawful possession of intoxicating liquor, and the case has been passed to this Court, before sentence, upon his exceptions. The first question concerns the denial of his motion to quash the information, upon the ground that the search warrant upon which the liquor was seized was void. The argument is that,

since this was so, the liquor would not be admissible in evidence, and so there could be no conviction for the possession of it. But if the search warrant were invalid, which it is not necessary to decide, this result would not follow. The legality of the search would not be in issue. When evidence is offered, the court will take no notice of how it was obtained, whether legally or illegally, whether properly or improperly, and it will not form a collateral issue to try that question. The Fourth and Fifth Amendments to the federal Constitution, relating to unreasonable search and seizure, and freedom from self-crimination, are not restrictions upon the powers of a State, but operate only upon those of the federal government. The corresponding provisions of our State Constitution (Articles 10 and 11) do not prevent the admission in evidence of things, the possession of which tend to show the guilt of a respondent, even though obtained from him by means of a search without a warrant. All this is fully stated, and the authorities are cited, in *State* v. *Stacy*, 104 Vt. 379, 401, 160 Atl. 257, 747, and the rule has been approved and followed, since then, in *State* v. *Pilon*, 105 Vt. 55, 57, 163 Atl. 571, and *State* v. *Parker*, 104 Vt. 494, 498, 499, 162 Atl. 696.

Furthermore, the motion to quash was not a right, but was addressed to the discretion of the court. *State* v. *Louanis*, 79 Vt. 463, 466, 65 Atl. 532, 9 Ann. Cas. 194; *State* v. *Stewart*, 59 Vt. 273, 284, 9 Atl. 559, 59 A. R. 710. Although the record does not show that the ruling was made as a matter of discretion, we will presume that it was since the contrary does not affirmatively appear. *State* v. *Fairbanks*, 101 Vt. 30, 34, 139 Atl. 918, and cases cited. Certainly no abuse of discretion is shown.

The respondent pleaded autrefois convict, and not guilty. Trial by jury was waived, as it might be under G. L. 2494, and after hearing evidence upon the issues, the court filed a finding of fact. The finding, which so far as the claim of double jeopardy was concerned, followed, in the main, the allegations of the plea, is this: In August, 1931, agents of the federal government, armed with a proper warrant searched the respondent's premises and found a quantity of intoxicating liquor. On the 11th of September following the respondent was indicted for the illegal possession of it, and, at a session of the District Court of the United States for the District of Vermont, he pleaded guilty and paid a fine. On the 17th of October the

officers of the State searched the same premises, which were still occupied by the respondent, and found, artfully concealed beneath the flooring of the woodshed, more intoxicating liquor which had been there at the time of the visit of the federal officers, but which they had failed to unearth. The liquor had been hidden in this place before the first raid occurred, by two friends under the direction of the respondent. That the liquor was the property of the respondent was admitted.

It is urged that the conviction in the United States District Court is a bar to a prosecution in the State court, because otherwise the respondent would be twice put in jeopardy for the same offense, as prohibited in the Fifth Amendment to the federal Constitution.

The plea of autrefois convict, as well as the plea of autrefois acquit, is grounded upon the universal maxim of the common law that no man is to be brought into jeopardy of his life more than once for the same offense. III Blackstone Comm. 335, 336. Although this language in strictness applies only to capital crimes, the operation of the maxim is not so confined, but extends to misdemeanors, 4 Stephen, Commentaries, 451, note. And so, too, the phrase ''jeopardy of life or limb,'' as used in the Fifth Amendment to the federal Constitution, while by strict construction it extends only to treasons and felonies, has been practically and wisely applied to all indictable offenses, including misdemeanors. 1 Bishop, New Criminal Law (8th ed.) par. 990, 991, and cases cited. The maxim itself is stated in different forms: ''*Nemo bis debet vexari pro una et eadem causa*''; ''*Nemo bis in periculum veniet pro eodem delicto*''; and ''*Nemo bis punitur pro eodem delicto,*'' but in each instance the meaning is essentially the same, and includes all criminal offenses. This ancient and well-established rule of the common law is sanctioned and enforced in most of the constitutions of the several states and in that of the United States. *Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496, 502. Constitutional provisions against double jeopardy are regarded as merely declaratory of the common law. *Kepner* v. *United States,* 195 U. S. 100, 125, 126, 49 L. ed. 114, 123, 24 Sup. Ct. 797, 1 Ann. Cas. 655; *United States* v. *Sanges,* 144 U. S. 310, 36 L. ed. 445, 447, 12 Sup. Ct. 609; *Commonwealth* v. *Ramunno,* 219 Pa. 204, 68 Atl. 184, 185, 14 L. R. A. (N. S.) 209, 123 A. S. R. 653, 12 Ann. Cas. 818; *State* v. *Healy,* 136 Minn. 264,

161 N. W. 590, L. R. A. 1917D, 726, 729; *Ex parte Bornee,* 76 W. Va. 360, 85 S. E. 529, L. R. A. 1915F, 1093, 1098; *Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496, 502.

A plea of former conviction may, therefore, be based either upon a constitutional guaranty or upon the common law. *Commonwealth* v. *Ramunno, supra.*

The plea must, however, be upon a prosecution for the identical crime, and must make it to appear that the offenses charged in both cases are the same in law as well as in fact, for it will be vicious if they are perfectly distinct in point of law, however nearly they may be connected in fact. *State* v. *Pianfetti,* 79 Vt. 236, 241, 65 Atl. 84, 9 Ann. Cas. 127; *State* v. *Jangraw,* 61 Vt. 39, 40, 17 Atl. 733; *State* v. *Lincoln,* 50 Vt. 644, 647; *State* v. *Watson,* 20 R. I. 354, 39 Atl. 193, 195, 78 A. S. R. 871; *Commonwealth* v. *Roby,* 12 Pick. (Mass.) 496, 504. The same act may constitute two separate crimes, and, if they are not so related that one of them is a constituent part, or necessary element, in the other, so that both are in fact one transaction, a prosecution and conviction may be had for each offense. *State* v. *Jangraw, supra,* page 41 of 61 Vt., 17 Atl. 733; *State* v. *Smith,* 43 Vt. 324, 327; *State* v. *Locklin,* 59 Vt. 654, 655, 10 Atl. 464; *State* v. *Lincoln, supra; State* v. *Nutt,* 28 Vt. 598, 602.

It is not a second jeopardy for the same act, but a second jeopardy for the same offense that is prohibited. *Theisen* v. *McDavid,* 34 Fla. 440, 16 So. 321, 26 L. R. A. 234, 235. Thus, it has been held that an offense may be at the same time an infraction of a city ordinance and of a state statute, and may be punished by both municipality and state without putting the offender twice in jeopardy, being regarded as two distinct offenses growing out of the same act, the one being a transgression of the municipal law, and the other a violation of the state law. *Theisen* v. *McDavid, supra; State* v. *Shimman,* 122 Ohio St. 522, 172 N. E. 367, 368, 73 A. L. R. 1502; *Thomas* v. *City of Indianapolis,* 195 Ind. 440, 145 N. E. 550, 35 A. L. R. 1194, 1200; *Mayhew* v. *City of Eugene,* 56 Ore. 102, 104 Pac. 727, Ann. Cas. 1912C, 33, 34; *In re Henry,* 15 Idaho, 755, 99 Pac. 1054, 21 L. R. A. (N. S.) 207, 209; cases cited in notes, 17 L. R. A. (N. S.) 68, and Ann. Cas. 1912C, 37.

And so, too, the same act may constitute a criminal offense equally against the United States and the State, subject-

ing the guilty party to punishment under the laws of each, provided the act is one over which both sovereignties have jurisdiction. *In re Guerra,* 94 Vt. 1, 13, 110 Atl. 224, 10 A. L. R. 1560; *United States* v. *Lanza,* 260 U. S. 377, 382-385, 67 L. ed. 314, 43 Sup. Ct. 141, 142, 143; *Cross* v. *North Carolina,* 132 U. S. 132, 33 L. ed. 287, 290, 10 Sup. Ct. 47; *Ex parte Siebold,* 100 U. S. 371, 25 L. ed. 717, 724; *United States* v. *Marigold,* 9 How. (U. S.) 560, 13 L. ed. 257, 261; *Fox* v. *Ohio,* 5 How. (U. S. ) 410, 12 L. ed. 213, 224. In the Guerra Case the question whether the acquittal or conviction under the federal statute would bar a prosecution under the statute of the state, or *vice versa,* was expressly left untouched, because it was not necessary to the determination of the issue presented, but in the subsequent Lanza Case it was held that the Fifth Amendment applies only to the proceedings of the federal Government, and that "the double jeopardy therein forbidden is a second prosecution under the authority of the federal government after a first trial for the same offense under the same authority" (page 142 of 43 Sup. Ct., 260 U. S. 377), and therefore a conviction obtained under a statute of the state of Washington forbidding the manufacture, transportation, or possession of intoxicating liquor was not a bar to a subsequent prosecution, involving the possession of the same liquor, under the National Prohibition Act (27 U. S. C. A.). The principle upon which the decision is based is perhaps nowhere more clearly stated than in *Moore* v. *Illinois,* 14 How. (U. S.) 13, 19, 14 L. ed. 306, 309, by Mr. Justice Grier, as follows: "An offense, in its legal signification, means the transgression of a law * * * Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both * * *. That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other."

 There is, therefore, no double jeopardy here under the Fifth Amendment. The Constitution of Vermont contains no corresponding provision (*State* v. *Felch,* 92 Vt. 477, 484.

105 Atl. 23); but since the rule as to the identity of the offenses is the same under the common law as it is under a constitutional guaranty, the prosecution of this respondent is not barred by his former conviction.

Aside from this, the two offenses were not identical in point of fact. The liquor seized by the federal agents was listed in the indictment returned by the federal grand jury, and it was for the possession of this particular contraband that the respondent was convicted in the federal court. On the other hand, the liquor seized by the State officers, and set out in the information filed in the State court against the respondent, was not that which had been made the basis of the former conviction. The only connection between the two lots was that the respondent had once possessed them both at the same time. The possession of the second lot continued subsequent to, and was therefore distinct from, that of the first. The former conviction, if it had been obtained in the State court, would have been a bar in a subsequent prosecution only as to the offense specified in the proceedings upon which the first judgment was based. *State* v. *Leonard*, 72 Vt. 102, 106, 47 Atl. 395; *State* v. *Brown*, 49 Vt. 437, 440; *State* v. *Ainsworth*, 11 Vt. 91, 92.

The plea of autrefois convict was properly held not to avail the respondent.

By an exception to the findings, the respondent urges that the State failed to offer any intoxicating liquor in evidence, and that none was received, so that the conviction is without supporting evidence. Of course the introduction of the liquor itself was not necessary, because the unlawful possession could have been proved without it. But seven bottles of intoxicating liquor, conceded to have been the property of the respondent, and which the evidence showed were concealed beneath the floor of the shed by the direction of the respondent, were produced in court. True, the transcript fails to show any offer of them in evidence, or any ruling upon the subject, but they were marked State's Exhibits 1 to 7, inclusive, so far as appears, without objection, were referred to as such during the trial by both sides, and were used by respondent's counsel in the examination of his witnesses. They are designated exhibits in the bill of exceptions. No question appears to have been made below as to their status, and they were treated as being properly in the case. The objection now made is unavailing.

*Lavalley* v. *Ravenna,* 78 Vt. 152, 154, 155, 62 Atl. 47, 2 L. R. A. (N. S.) 97, 112 A. S. R. 898, 6 Ann. Cas. 684.

 The further point is made that the respondent could not be found guilty because the State had failed to prove that he had knowledge that the liquor was on his premises at the time of the search by the State officers. He had the right, he claims, to assume that the federal agents had before that time found and taken all the liquor that he had. But it is certain, from the testimony of his own witnesses, that he caused it to be concealed. From the indictment found by the federal grand jury, he must have known what liquor he was charged with possessing, and that this did not include what was later found by the State officers. And, so assuming that his knowledge was material, there was evidence tending to show that it existed.

 Finally, it is urged that to find the respondent guilty would result in the imposition of an excessive fine or a cruel and unusual punishment, within the prohibition of the Eighth Amendment to the federal Constitution because he had already paid a fine of $500 to the federal government, and might under G. L. 6558, as amended by section 1, No. 135, Acts of 1923 (the law in force at the time of the trial), be sentenced to pay to the State a fine of not less than $300 and not more than $1,000, or to be confined in prison for not less than three months, or not more than twelve months, or both. The Eighth Amendment applies to the United States government and not to the states. *O'Neil* v. *Vermont,* 144 U. S. 323, 36 L. ed. 450, 456, 12 Sup. Ct. 693. Our State Constitution contains no similar prohibition. But the principle is one of common law. By an act of Parliament passed in 1688 (I William and M. ch. 2), entitled "An Act Declaring the Rights and Liberties of the Subject, and Settling the Succession of the Crown," it was provided that "excessive bail ought not to be required, nor excessive fines imposed nor cruel and unusual punishments inflicted." See *Ex parte Kemmler,* 136 U. S. 436, 34 L. ed. 519, 523, 524, 10 Sup. Ct. 930. This act became a part of the common law of England, which, in one of its meanings is said to be "the law administered by the common law courts whether *jus scriptum,* or *jus non scriptum,* as distinct from the rules of Courts of Equity." Indermaur, Principles of the Common Law (Wilkshere's Ed.) 3. By G. L. 1479, it is provided that "So much of the common law of England as is applicable to the

local situation and circumstances and is not repugnant to the constitution or laws, shall be law in this state, and courts shall take notice thereof and govern themselves accordingly.'' The common law thus adopted is the unwritten law of England as amended or altered by acts of Parliament in force at the time of the migration of settlers to this country, and such other acts of Parliament, passed since the migration, which have been adopted by our courts. *Clement* v. *Graham,* 78 Vt. 290, 301, 63 Atl. 146. The humane and beneficent principle of this act has been recognized in practice, in the courts of this State, a fact of which we take judicial notice. We conclude, therefore, that it is a part of our law. There is, however, no reason why, if the circumstances warrant, the statutory penalty may not properly be visited upon the respondent for his breach of the law of this State, which, as we have seen, is a distinct offense from the violation of the National Prohibition Act, for which he has already been punished. See *State* v. *O'Neil,* 58 Vt. 140, 156, 2 Atl. 586, 56 A. R. 557; *O'Neil* v. *Vermont, supra,* page 454 of 36 L. ed., 144 U. S. 323, 12 Sup. Ct. 693.

The respondent has cited decisions to the effect that a sentence in one jurisdiction may be taken into consideration in fixing or suspending the penalty in another, and that, although not prohibited, punishment in two jurisdictions should not in practice be imposed where there are no aggravating circumstances. See cases cited in note 16 A. L. R. 1242. But these cases do not lay down a rule of law, but merely suggest a guide for the exercise of the discretion of the court where such discretion exists in determining what penalty shall be imposed after conviction. The legality of the conviction is not affected. As we have seen, the respondent has not yet been sentenced, and therefore the argument is beside the point. No question of abuse of discretion exists, because no discretion has as yet been exercised.

*Judgment affirmed. Let sentence pass and execution be done.*