### State of Vermont v. Arnold J. Burclaff, Jr.

[418 A.2d 38]

No. 108-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 16, 1980

462

*Dale O. Gray,* Caledonia County State's Attorney, and *Christopher B. Leopold,* Deputy State's Attorney, St. Johnsbury, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Daniel Albert* and *Steven Freihofner,* Law Clerks (On the Brief), Montpelier, for Defendant.

**Hill, J.** Defendant, an inmate at the St. Johnsbury Correctional Center, appeals from his conviction of escape from work release in violation of 13 V.S.A. § 1501(b)(1). We affirm.

At approximately 8:45 A.M. on November 6, 1978, defendant was released from the St. Johnsbury Correctional Facility so that he could report for work at the St. Johnsbury House, a senior citizens' center. Sometime between 9:00 A.M. and 9:30 A.M. that same morning defendant called the St. Johnsbury House to inform his employer that he would be late for work since he had to pay a gas bill. At 11:00 A.M. defendant's work supervisor called the correctional center to report that defendant had failed to show up for work. A search of the correctional center was instituted to determine whether defendant had left the center. Upon finding that the defendant had in fact left the center, a general broadcast that defendant had escaped was issued by the state police. Twelve days later defendant was apprehended.

Defendant was brought to trial on an information charging that on November 6, 1978, he "was then and there a person in lawful custody . . . and did then and there fail to return from furlough to the St. Johnsbury Community Correctional Facility at a specified time as required by an order issued in accordance with § 753 of Title 28 V.S.A., in violation of 13 V.S.A. § 1501(b)(2)." At the close of the State's evidence, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to support a conviction for the offense charged, because the information charged escape from furlough, 13 V.S.A. § 1501(b)(2), while the proof showed, if anything, escape from work release, 13 V.S.A. § 1501(b)(1). Pursuant to the trial judge's suggestion the State amended the information to charge escape from work release in violation of 13 V.S.A. § 1501(b)(1) so that the information would conform to the proof. Defendant's motion was then denied.

I.

It is defendant's first contention that the trial court's denial of his motion for a judgment of acquittal was error, since the amendment to the information was improperly granted. We disagree.

██  Where a variance between the crime charged in the information and the evidence adduced at trial is alleged, it is appropriately brought to the attention of the trial court by way of a motion for a judgment of acquittal. See 2 C. Wright, Federal Practice and Procedure: Criminal § 516 (1969). The responsibility then devolves upon the court to determine whether the variance amounts to reversible error or whether it is merely harmless error that can be corrected by an amendment to the information. See V.R.Cr.P. 7(d). The inquiry that must be made is whether the variance is of such a nature that to permit an amendment would result in prejudice to the substantial rights of the defendant. *Berger* v. *United States*, 295 U.S. 78, 82 (1935). The general rule that the allegations in the information and the proof must conform, like the rule that an information can be amended during trial if no different offense is charged, V.R.Cr.P. 7(d), is based on the firmly established requirements: (1) that the accused shall be informed of the charge with such particularity that he will be able to prepare his defense intelligently, *State* v. *Christman*, 135 Vt. 59, 60, 370 A.2d 624, 625 (1977), and will not be taken by surprise by the evidence adduced at trial, *State* v. *Brean*, 136 Vt. 147, 149–50, 385 A.2d 1085, 1087 (1978); and (2) that he may be protected from a subsequent prosecution for the same offense, *State* v. *Margie*, 119 Vt. 137, 141, 120 A.2d 807, 810 (1956).

In the present case, while we in no way sanction the inartful manner in which the information was prepared, we are unable to discern any prejudice to the defendant by allowing the amendment. To be sure, the information charged escape from "furlough" and cited 13 V.S.A. § 1501(b)(2). Despite this, however, we are unable to accept defendant's argument that those references should be taken as controlling in determining what crime he was charged with, and that we should ignore other references in the record and in the information and accompanying documentation. First, a review of the record makes it apparent that the term "furlough" was used generically and was not at all intended to refer to a specific statutory crime. Second, the information expressly stated that the defendant was on a leave of absence pursuant to work release order issued under 28 V.S.A. § 753, which can only serve as a basis for a charge of escape from work release under 13 V.S.A. § 1501(b)(1), and not as a basis for a charge of escape from

furlough under 13 V.S.A. § 1501(b)(2). Third, an examination of the probable cause affidavit that necessarily must accompany the information, V.R.Cr.P. 4(a), reveals the proper citation to the statutory section governing escape from work release. See *State* v. *Christman, supra,* 135 Vt. at 61, 370 A.2d at 626. We therefore must conclude that the citation in the original information was merely a typographical error that was permissibly corrected by an amendment under V.R.Cr.P. 7(d).

Having the benefit of both the information and probable cause affidavit, it cannot seriously be argued that defendant was incapable of intelligently preparing his defense. This becomes further apparent when it is realized that the elements of the crimes of escape from furlough and escape from work release are identical, with the only exception being the type of order under which the inmate is released. And certainly it cannot be gainsaid that the defendant knew the purpose of his release and, therefore, was in a position to know the type of order under which he was released. Moreover, while not in and of itself determinative, the fact that defendant did not move for a continuance when the amendment was granted is cogent evidence that he was not taken by surprise. *State* v. *Brean, supra.* Finally, because the offense that defendant was convicted of is clear, there is no risk that he will be prosecuted again for the same crime.

▪ Defendant's contention that the trial court improperly amended the information sua sponte must also fail. While we agree with defendant that the trial court is under an obligation of judicial impartiality and that amendments are primarily the responsibility of the State, see *United States* v. *Blanchard,* 495 F.2d 1329, 1332–33 (1st Cir. 1974), we find no express proscription against sua sponte amendments, see V.R.Cr.P. 7(d). Whether they are permissible as a general matter, however, is a question we need not decide. In the instant case, although it is unclear whether the amendment was made by the trial court or by the state's attorney at the urging of the trial court, it is clear that the amendment was merely technical in nature and that defendant was neither prejudiced at trial nor impaired in his defense. *United States* v. *Blanchard, supra.*

Since the amendment was proper, the trial court's denial of defendant's motion for a judgment of acquittal was also proper.

## II.

Defendant next claims error in the trial court's admission into evidence of the furlough record sheet kept by the correctional center. He argues that the record sheet was improperly admitted under the Uniform Business Records as Evidence Act, 12 V.S.A. § 1700, since it was introduced through an unqualified witness and since the sources of the information were not sufficiently reliable to justify the record's admission. Moreover, he contends that this ruling was prejudicial because the record sheet was the only evidence as to the existence of a valid work release order, 28 V.S.A. § 753, and as to a violation thereof, both of which are necessary elements of the crime charged.

Defendant's argument must fail, since the record sheet was properly admitted. Section 1700 of Title 12, which governs the admissibility of business records, provides in pertinent part as follows:

> (b) A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

There is no dispute that the record was made in the regular course of business at or near the time defendant was released. Determinative, therefore, of defendant's assignment of error are whether the witness was qualified to establish the document's admissibility and whether the sources of information and method of preparation were such as to justify admission of the record.

In light of contemporary business practices, the stringent common law rule that all participants in the document production process must be called as witnesses has been abandoned. See 12 V.S.A. § 1700; *Dufresne-Henry Engineer-*

*ing Corp.* v. *Gilcris Enterprises, Inc.*, 136 Vt. 274, 276, 388 A.2d 416, 418 (1978); *Colonial Plumbing Corp.* v. *Solar Heating, Inc.*, 133 Vt. 82, 83, 329 A.2d 638, 640 (1974); C. McCormick, Handbook of the Law of Evidence § 312 (2d ed. 1972). In its stead, courts have formulated a variety of rules as to whom must be called to establish the admissibility of a business record. We believe that the better and more practical rule is that "in the absence of some proof throwing suspicion upon the genuineness of the record itself," it is sufficient if the record is verified by a witness who can testify that records of this type have been regularly prepared by the business under a routine that warrants reliability, and that the particular record sought to be admitted is of that class. *Jennings* v. *United States*, 73 F.2d 470, 473 (5th Cir. 1934). Conversely, where the reliability of a record is questioned, it is within the discretion of the trial judge to require a greater showing on the part of the proponent.

With respect to whether the source of the recorded information is sufficient to justify admission of the record, it has generally been stated that the relevant entries must have been made in the ordinary course of business by one with personal knowledge or must have been "transmitted to the [record maker] by one with firsthand knowledge and a business duty to know and report the information." C. McCormick, *supra*, § 310, at 726. Again recognizing the realities of modern business practices, direct proof of actual knowledge has been dispensed with, and evidence that it was someone's business duty within the organization's routine to observe the matter recorded will usually suffice to establish that the record is based on actual knowledge. See *Fauceglia* v. *Harry*, 409 Pa. 155, 185 A.2d 598 (1962).

In the case at bar, the furlough record sheet (a log showing who had been released and on what terms) was admitted through the desk officer at the correctional center. She testified that the furlough record sheet was regularly prepared and that there were a number of checks built into the system of preparation. While she did not make the actual notations on the record, she testified that she was required to compare the information on the inmate's work release authorization with that on the record sheet before releasing the prisoner.

The work release authorization was the actual pass that the inmate received when released, and was signed by the supervising officer of the correctional facility, who evidently was under a duty to know and to report accurately to other employees at the correctional facility the terms of an inmate's release. If there were any discrepancies between the two documents, the desk clerk testified, the information on the authorization would control, and she would make the appropriate changes on the furlough record sheet. On the day defendant was released, she recalled that the information on his work release pass jibed with that on the record sheet. She also stated that when an inmate returns, the desk officer on duty routinely records the time of his return on the record sheet. The record sheet here, however, contained no such entry, thereby showing that defendant failed to return.

Defendant, on the other hand, adduced no proof throwing suspicion on the genuineness of the record. Accordingly, we see no error in admitting the record sheet to show that defendant was released pursuant to a valid work release order, the terms of which were identical to those listed on the admitted document, and that he had violated that order.

*Affirmed.*