**UNITED STATES of America, Plaintiff,**

v.

**Anthony Ivory BATTLE, Defendant.**

**Nos. CR–3–74–35, CR–3–74–36 and CR–3–77–27.**

United States District Court, S. D. Ohio, W. D.

Sept. 2, 1981.

Thomas A. Schaffer, Vanessa D. Walton, Asst. U. S. Atty., Dayton, Ohio, for the U. S.

Anthony Ivory Battle, pro se.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTIONS TO VACATE, SET ASIDE OR CORRECT SENTENCES, PURSUANT TO 28 U.S.C. § 2255; FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT TO PLAINTIFF AND AGAINST DEFENDANT; TERMINATION ENTRIES

RICE, District Judge.

The captioned cause came on to be heard upon the Motions of the Defendant, made pursuant to 28 U.S.C. § 2255, seeking orders of the Court vacating, setting aside and correcting certain sentences, the basic thrust of which motion is premised on his assertion that the two concurrent five year sentences imposed on October 16, 1974 (CR–3–74–35, CR–3–74–36) upon convictions for violations of 18 U.S.C. § 495, uttering a forged United States Treasury check, and 18 U.S.C. § 751(a), escape from custody; and the six year sentence imposed on June 30, 1977 (CR–3–77–27) upon another conviction for violation of 18 U.S.C. § 495, were predicated on false and erroneous information contained in the Pre-Sentence Investigation Reports prepared by the United States Probation Department.

Reference is made to this Court's Decision and Entry of February 27, 1981, 509 F.Supp. 929, which, in dealing with the then pending motions before this Court, directed the Government to respond, to expand the record where necessary and to specifically

brief the Government's position on four specific questions with respect to each of the alleged items of misinformation (considering the items individually and collectively):

(1) Was the item of information actually considered by the sentencing court? (including, to the extent possible, references to the sentencing transcript indicating that the item was considered);

(2) Was the item of information, if considered, actually erroneous? (including, to the extent possible, references to the record or other documents from which the item was derived or developed);

(3) Was the item of information, if considered, improperly considered? (including reference either to prior convictions which are invalid for lack of counsel, or the effect of the confidentiality of juvenile records);

(4) Was the item of erroneous or improperly considered information material to the sentencing court's determination of the sentences imposed?

After counsel had followed the briefing schedule and instructions set forth above, the Court and counsel determined that the ends of justice warranted a hearing being held. Such an evidentiary hearing took place on July 1, 1981, at which time testimony was taken from the Defendant, his wife, and two representatives of the United States Probation Department, John Koontz, who had prepared the 1974 Pre-Sentence Investigation which contained many of the alleged errors of which the Defendant complained and William R. Jones, who had prepared the 1977 report, containing additional alleged items of misinformation, and who had, additionally, been the Defendant's probation counselor in the Montgomery County Juvenile Court.

Based upon the pleadings, the testimony at oral hearing, the transcript of the 1974 and 1977 sentencings, the relevant probation reports, and other materials submitted by the parties, the Court sets forth the following relevant Findings of Fact separate from its Conclusions of Law:

## A. FINDINGS OF FACT

1. The procedural background of these cases is as follows:

On December 22, 1980, Anthony Ivory Battle filed his third Motion for Modification of a Six Year Sentence for Uttering a Forged U.S. Treasury Check received on June 30, 1977, in Case # CR–3–77–27.

Previously, in that case, on September 16, 1977, the Court denied Defendant's motion, by letter, for reduction of sentence.

On May 5, 1978, Defendant filed a Motion to Proceed in Forma Pauperis with a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255. In this Motion to Vacate his sentence, Battle alleged that, "his constitutional rights were violated when the Court, with knowledge failed to seek information of his mental state". This motion was denied.

Subsequently, on April 16, 1980, Battle filed yet another motion pursuant to 28 U.S.C. § 2255, contending "that he is entitled to relief because he did not have the necessary intent to commit the offense." This motion was also denied, as "meritless and frivolous".

In the instant Motion, Battle contends that his sentence was established by "erroneous information".

A similar Motion pursuant to 28 U.S.C. § 2255 was filed by Battle in the companion cases, Case Nos. CR–3–74–35 and CR–3–74–36, in which two concurrent five year sentences were imposed on October 16, 1974 for uttering a forged treasury check and for escape from custody.

2. In these motions, the Defendant contends that the Court considered erroneous information contained in the 1974 probation report which, in all likelihood, caused him to be sentenced, instead of receiving the probationary suspended sentences he likely would have received as a first time felon. He further contends that the erroneous information contained in the 1977 report resulted in a harsher sentence than he would otherwise have been given.

3. The areas of allegedly erroneous information contained in the 1974 report, together with the areas in which the Court misconstrued correct information given him by the Probation Department are:

A. The United States Probation Department incorrectly advised the Court that Battle was responsible for the theft of a postal carrier vehicle, including the contents, specifically a check payable to Richard D. Clark;

B. The Court improperly considered [1] his juvenile offenses for the disposition of which he lacked counsel and, moreover, the Court misused the confidential juvenile records in developing such information;

C. The United States Probation Department erroneously reported that the Defendant had been charged with Grand Larceny;

D. The United States Probation Department erroneously reported that the Defendant was a pimp for three prostitutes;

E. The United States Probation Department erroneously reported that the Defendant began to fence fictitious identification around Fifth and Shannon streets in the Negro ghetto in 1971 and that ... the Defendant admitted to being involved in at least fifty stolen government checks; and

F. The Court stated that the Defendant indicated the police had "abused" him.

4. The areas of alleged erroneous information contained in the 1977 probation report, together with the areas in which the Court misconstrued correct information given him by the Probation Department are:

A. The United States Probation Department incorrectly stated that the Defendant was "recalcitrant in naming individuals who participated in the offense";

B. The Court considered the Defendant's criminal record which allegedly included invalid "convictions" for both juvenile and adult offense;

C. The United States Probation Department provided the Court with erroneous information that the Defendant had escaped from custody *after* conviction for forgery in 1974.

5. The United States Probation Department did *not* incorrectly advise the Court that the Defendant was responsible for the theft of a postal carrier vehicle, including the contents, specifically a check payable to Richard D. Clark. The Trial Judge did not consider that the Defendant was charged with vehicle theft; only that he was charged with uttering a forged treasury check.

A review of the 1974 probation report, under the caption *Details of Offense* (Exhibit "A") [2] clearly shows that the probation report gave the Judge the background of the offense (the theft of mail contained in the trunk of the postal carrier) and that the report in no way linked the Defendant to the theft of either the mail or the mail truck. Rather, the report clearly attributes to the Defendant only the action of passing or uttering a forged check, which was among those stolen from the mail truck.

It is likewise clear that the sentencing judge did not attribute to the Defendant any more than the act of uttering a forged

1. Testimony at the oral hearing was consistent with the allegations made in the Plaintiff's pleadings to the extent that the Defendant's claim for relief was based upon allegedly erroneous information given by the Probation Department in its pre-sentence report to the Judge. As indicated below, this Court finds that no erroneous information was so included in the pre-sentence investigations. The Court has gone further than the Defendant, himself, might have asked, by considering whether *correct* information was *incorrectly* evaluated or misconstrued by the sentencing judge. As will be discussed, this Court finds that the information was not so misconstrued, with one possible exception (the matter of the alleged juvenile rape) which the Court concludes was not a determinant in setting the length of sentence.

2. Filed under seal with United States Clerk of Courts Office, same to be transmitted, under seal, to the United States Court of Appeals for the Sixth Circuit, together with the record in these cases, if necessary.

treasury check. At pages 6 and 7 of the handwritten transcript of the October 16, 1974, sentencing,[3] the following colloquy took place:

Court: "I have a complete detailed report about you. 1974, May, postal carrier had an auto stolen, later recovered. It was determined that all items of mail missing along with personal items. Carrying a check for delivery that day, a check for Richard D. Clark and that is what you are here in front of me for."

Mr. Battle: "Yes."

While the Judge's comments, *taken by themselves,* might be read to infer that the Defendant was in court on a charge of theft of the postal carrier with its contents, the statement, *when considered along with* the portion of the probation report referred to above and the report as a whole which clearly states, on several occasions, the extent of the Defendant's involvement to be uttering a forged treasury check, clearly shows that the Judge's comments, in context, were nothing more than a statement of the true fact that the Defendant was before him due to involvement with a check that had been stolen from the trunk of the stolen mail truck.

Since the probation report did not misinform the Court and since the Court was under no misapprehension concerning the extent of the Defendant's involvement, it is not necessary to comment upon a regiscope photo showing the Defendant passing the check in question and the Defendant's affidavit of August 16, 1974, in which he admitted to possession and forgery of the check in question.[4]

6. The Court did not improperly consider the Defendant's juvenile offenses, for the disposition of which he allegedly lacked counsel, and did not misuse the Defendant's confidential juvenile records in developing such information. The United States Probation Department report did not contain any erroneous information concerning the Defendant's juvenile record.

Under Ohio law, juvenile records are confidential and access thereto is prohibited pursuant to Revised Code Section 2151.14. In this case, the Defendant executed a waiver to the United States Probation Department authorizing access to the juvenile records.[5] Moreover, the pre-sentence investigation provided to the Court explicitly stated that the juvenile record was being provided as confidential pursuant to Ohio law.

The probation report (Exhibit "A") clearly corroborated the Defendant's testimony at the oral hearing that he was investigated for rape and that the case was dismissed, following which the Defendant was sent to Fairfield School for Boys as a probation violator. Even if the Trial Judge's somewhat loose language when referring to the Defendant's juvenile record ("started in trouble at age fourteen; had a rape, another theft, age sixteen. Sent away." Tr. at 9) can be construed as meaning that the Judge considered the fact of conviction of rape as opposed to a mere charge and dismissal, the fact is that the Judge correctly considered the fact that, as a result of the charges and other admissions,[6] he was sent away. Any misapprehension on the part of the Judge was not the fault of the Probation Department and said misapprehension, even assuming, arguendo, it existed, cannot be said to be materially false in such a way as to contribute to the fact of sentencing.

---

3. Attached as Exhibit "A" to Reply Brief of Plaintiff-Respondent, filed April 20, 1981 (Docket # 38).

4. Attached as Exhibit "D" to Reply Brief of Plaintiff-Respondent, filed April 20, 1981 (Docket # 38), and authenticated by Docket # 51 (Plaintiff's Authentication of Documents) with attached affidavits, filed August 31, 1981.

5. Attached as Exhibit "C" to Reply Brief of Plaintiff-Respondent, filed April 20, 1981 (Docket # 38), and authenticated by Docket # 51 (Plaintiff's Authentication of Documents) with attached affidavits, filed August 31, 1981.

6. The Defendant concededly having intercourse with the young lady, although, as it turned out, with her consent; the Defendant's further admissions of sexual relations with girls on different occasions.

7. The United States Probation Department did not erroneously report that the Defendant had been charged with Grand Larceny. The Trial Judge did not consider a Grand Larceny charge in passing sentence.

The pre-sentence investigation refers to the Defendant's Grand Larceny arrest and release on December 19, 1972. The Trial Judge in going over the Defendant's list of arrests and convictions, stated as follows:

"Had disorderly conduct, *Grand Larceny*, petit larceny, speeding, released." Tr. at 9 (emphasis added).

A comparison of the Defendant's pre-sentence report and the transcript would indicate that the only charge or arrest for which the Defendant was released was Grand Larceny. Thus, the Trial Judge did not improperly consider this information; and the probation report did not improperly report it. Moreover, the Defendant, in his submission to the Court, filed June 23, 1980 (introduced into evidence as Government's Exhibit A), conceded that he was investigated for Grand Larceny, contrary to his testimony at the hearing. Finally, the Defendant's attorney, at page 3 of the transcript, initially advised the Court that his client had only one prior conviction and that for petit larceny.

8. The United States Probation Department did not erroneously report (and the Judge did not erroneously consider) that the Defendant was a pimp for three prostitutes.

The Defendant vehemently denies that the information is true and that he related same to the Probation Department. The probation counselor does not recall the conversation, but his general procedures, testified to at trial, were such at the time as to render highly unlikely, if not impossible, that he would have included something as potentially damaging in the report concerning the Defendant if the Defendant had not admitted same. The probation report (Exhibit "A") clearly states on page 8 that:

"Anthony Battle has not been gainfully employed for the past four years, during which he and his common law wife drew welfare assistance. Also during this period of time, Battle admits to having three prostitutes working for him and they were providing him $200 per day ...."

The Defendant did not deny this statement in the probation report when he was confronted with it by the Trial Judge at the time of sentencing. Tr. at 8 and 9. This Court, as was the sentencing judge, is free to infer that an allegation as potentially damaging as being a pimp for three prostitutes would be denied, vehemently, were it not so.[7]

Finally, in addition to the fact that the Court has concluded that the Defendant made the statement to the probation officer, further evidence of its truth was revealed at the oral hearing when both the Defendant and his wife admitted to living together during the period of time prior to sentencing, along with their three children, on a monthly subsistence of only $267.00 per month from the Welfare Department. In addition, although both the Defendant and his common law wife were unemployed at that time, they had a combined drug habit of between $60 and $120 per day. This Court, not believing in Santa Claus and having severe reservations about the existence of the Easter Bunny, must conclude that one does not support a wife and three children and a drug habit of some $60 to $120 per day on a $267.00 per month welfare check. Therefore, the statement in the probation report concerning the Defendant's involvement in criminal activities, buttressed by his own admission, has a very real "ring of truth" to it.

7. In *United States v. Bass*, 535 F.2d 110, 121 (D.C. Cir. 1976), distinguishing *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), wherein the defendant at the time of sentencing did not dispute the truthfulness of the Court's averments, stated:

"This distinction is highly significant, because the absence of a denial itself provides an important indicia of reliability. We see no reason to bar sentencing judges from considering relevant information whose accuracy is not disputed."

9. The United States Probation Department did not erroneously report (and the Trial Judge did not erroneously consider) that the Defendant began to fence fictitious identification around Fifth and Shannon streets in the Negro ghetto in 1971 and that . . . the Defendant admitted to being involved in at least fifty stolen Government checks.

This statement was not denied at the oral hearing. The same reasoning as applied to Finding of Fact No. 8, *supra*, applies to this Finding of Fact, this Court having considered the procedures of the Probation Department's investigator, the Defendant's failure to deny this aspect of the probation report when confronted with it at the time of sentencing (Tr. at 7 and 8), and the Defendant's extensive drug habit with no visible means of supporting same during the months leading up to the time of sentencing.

10. While the Court did state that the Defendant indicated the police had "abused" him, and while such statement was erroneous, such a statement was not significant or material to the Court's determination of the sentences imposed. Whether the Defendant stated that the police had "abused" him or whether he stated that he had escaped because he was "frightened that the police would abuse him" is, insofar as sentencing is concerned, a distinction without a difference.

11. The United States Probation Department did not incorrectly state (and the Trial Judge did not improperly consider) that the Defendant was "recalcitrant in naming individuals who participated in the offense."

In reviewing the transcript of the sentencing on June 30, 1977 (attached as Exhibit "A" to the Plaintiff's Answer to Defendant's Motion for Modification of Sentence, filed April 20, 1981, Docket # 25),

the Trial Judge specifically related to the Defendant that "You will not identify people who forged the names, although you admit involvement in the theft." Tr. at 3. The Defendant did not deny this allegation. Moreover, in the report of J. D. Bryant, Postal Inspector, dated May 3, 1977, directed to the then United States Attorney (attached to the aforesaid Plaintiff's Answer to Defendant's Motion for Modification of Sentence as Exhibit "B"[8]), mention is made of the fact that the Defendant "stated that the check had been signed by another individual and advised that at that time he did not desire to release that individual's name." The 1977 probation report (Exhibit "B")[9] reflected in the section entitled *Defendant's Version of Offense* that "he did not care to identify [the person who had forged the true payee's name]." This Court, therefore, concludes that the statement objected to by the Defendant was, in fact, a true statement.

12. The Court did not improperly consider the Defendant's criminal record which allegedly included invalid "convictions" for both juvenile and adult offenses.

The same reasoning applies here as applied in Finding of Fact No. 6, *supra*. In addition, there has been no judicial finding of invalidity as to the Defendant's juvenile offenses. The Defendant executed a waiver to the United States Probation Office authorizing access to these juvenile records.[10]

13. The United States Probation Department did not provide the Court with erroneous information that the Defendant had escaped from custody *after* conviction for forgery in 1974.

A review of the 1977 pre-sentence investigation (Exhibit "B") reveals that: "Battle escaped from federal agents after he had been apprehended for the above forgery offense on Dayton's west side." Pre-sen-

---

8. Authenticated by Docket # 51 (Plaintiff's Authentication of Documents) with attached affidavits, filed August 31, 1981.

9. Filed under seal with United States Clerk of Courts Office, same to be transmitted, under

seal, to the United States Court of Appeals for the Sixth Circuit, together with the record in these cases, if necessary.

10. See Plaintiff's Authentication of Documents (Docket # 51) with attached affidavits.

tence investigation at 4. This is a correct statement of events in that the Defendant was charged, in 1974, with not only the act of uttering a forged treasury check but, also, with the act of escape from custody after apprehension for said forgery. See 1974 pre-sentence investigation (Exhibit "A").

The United States Probation Department did not provide the Court with erroneous information with regard to the escape. The Trial Judge did not misconstrue the information that had been properly presented to him in the pre-sentence investigation. The Trial Judge stated, at page 3 of the transcript of the June 30, 1977, sentencing:

"... you were before me in 74, forgery, and I sentenced you to five years and then you escaped. It ran concurrently."

Reading this statement of the Trial Judge, in its entirety, clearly shows that Judge Weinman correctly stated that he had imposed concurrent sentences in 1974 for forgery and escape. The expression "It ran concurrently" reveals that the Judge was aware, at the time of the 1977 sentencing, that the escape charge in 1974 was before him at the same time as the forgery matter and that, as a result, concurrent sentences were imposed. Therefore, the entirety of the Judge's monologue to the Defendant, including the fact that the two 1974 convictions ran concurrently, reveals that Judge Weinman was not under the impression that the 1974 forgery conviction occurred first and then, following the sentence, the Defendant escaped.

14. In summation, as to Findings of Fact, this Court concludes that the Trial Court was not furnished any misinformation, by the United States Probation Department in its pre-sentence investigations concerning the Defendant. Moreover, the sentencing judge did not erroneously consider any items of information which were correctly reported by the United States Probation Department.

B. *CONCLUSIONS OF LAW*

1. A sentencing judge is not so narrowly restricted in imposing sentence that he cannot predicate sentence on habitual misconduct, whether or not it resulted in convictions. *United States v. Malcolm,* 432 F.2d 809, 816 (2 Cir. 1970).

2. The sentences imposed in the captioned causes were within statutory guidelines.

3. Said sentences were not based upon erroneous information.

4. The sentences imposed were based upon accurate information, correctly reported to the Trial Judge. None of the information objected to was incorrect.

5. Nothing in the Constitution prevents a sentencing judge from considering a defendant's juvenile record. *United States ex rel. Jackson v. Myers,* 374 F.2d 707, 708 (3rd Cir. 1967). Under Ohio law ... juvenile convictions shall be inadmissible as evidence in any other court, "except that the judgment rendered and the disposition of such child may be considered by the Court only as to the matter of sentence or to the granting of probation." *Workman v. Cardwell,* 338 F.Supp. 893, 898 (N.D.Ohio 1972).

C. *THE MATTER OF THE DEFENDANT'S SUBMITTED BUT NOT YET FILED PRO SE PLEADINGS*

On March 17, 1981, the Defendant's submitted to the Clerk's Office a Motion for Leave to Proceed *in forma pauperis,* together with a proposed complaint, seeking relief against the Chief of Police of the Dayton Police Department by virtue of that department's having incomplete and inaccurate criminal information in its file, which the Defendant herein has attempted to have expunged. A thorough reading of the proposed complaint indicates that the thrust of the Defendant's complaint concerns "several entries of arrests for which no disposition is indicated and of arrests and convictions which were perpetrated in violations of Plaintiff's constitutional rights." This Court will sustain the Defendant's application to proceed *in forma pauperis* and will order this complaint filed and notice served upon the Defendant, Chief of Police, Day-

ton Police Department. As soon as said case is docketed, this Court will direct the Office of the Clerk of Courts to prepare an entry referring same to the United States Magistrate in accordance with law and practice before this Court.

■ On May 18, 1981, the Defendant herein submitted for filing an Application to Proceed *In forma pauperis* and a proposed complaint directed against "two unknown United States Probation Officers of the United States District Court Southern District of Ohio, Dayton." The thrust of the Defendant's proposed complaint is that "misinformation about Plaintiff's activities immediately preceding one of the offenses charged, and misinformation about the specific subject matter of that offense; misinformation about the occurrence, and disposition of juvenile offenses by the Plaintiff [Defendant herein], including offenses with respect to which Plaintiff lacked counsel, and misuse of confidential juvenile records in developing such information; misinformation about prior adult criminal conduct or criminal convictions of the Plaintiff; misinformation about the time at which Plaintiff began to engage in criminal activity; misinformation indicating that Plaintiff claimed police brutality upon arrest for one of the offenses charged," were contained in the pre-sentence reports furnished the Trial Judge, all of which inaccurate information caused the Trial Judge to impose a term of imprisonment and/or longer sentence other than the Judge may have considered had the information not been contained within the pre-sentence report. The Court will not grant the Defendant's request to proceed *in forma pauperis* on this matter and will, additionally, not allow the pleadings above referenced to be filed. The "bottom line" in this Court's decision on the captioned cases is that the United States Probation Department did *not* provide any erroneous information to the sentencing judge. Therefore, such a conclusion operates to collaterally estop the Defendant herein from relitigating that issue against "two unknown probation officers". A copy of the Defendant's proposed complaint which the Court has not ordered filed will be appended to this decision (Exhibit "C").

WHEREFORE, based upon the aforesaid Findings of Fact and Conclusions of Law, this Court finds in favor of the Plaintiff-Respondent and against the Defendant-Petitioner and, in so doing, denies the Defendant-Petitioner's requests, filed under 28 U.S.C. § 2255, seeking orders of the Court vacating, setting aside or correcting the sentences rendered in the above captioned causes. Judgment is therefore ordered entered in favor of the Plaintiff-Respondent and against the Defendant-Petitioner on each of the three captioned causes.