## State of Vermont v. John Ramsay

[499 A.2d 15]

No. 83-359

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed June 14, 1985

Concurring Opinion Filed August 2, 1985

Motion for Reargument Denied July 16, 1985

*John J. Easton, Jr.*, Attorney General, *Elizabeth Grant Rome*, Assistant Attorney General, and *David Tartter* (On the Brief), Montpelier, for Plaintiff-Appellee.

*Mickenberg, Dunn, Sirotkin & Kupersmith*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant was convicted at a trial by jury of two counts of simple assault in violation of 13 V.S.A. § 1023(a)(1). He raises three claims on appeal: (1) the United States and Vermont Constitutions bar the charges on double jeopardy grounds; (2) prosecutorial impropriety deprived him of his right to a fair trial; and (3) the sentencing court's consideration of allegations of assaults by defendant "over a period of time" violated the rule of *State* v. *Williams*, 137 Vt. 360, 364, 406 A.2d 375, 377 (1979), *cert. denied*, 444 U.S. 1048 (1980). We affirm.

## I.

Defendant was convicted of two counts of simple assault. The first count charged that defendant had assaulted his wife on January 29, 1982, by "jabbing her hands with a paring knife." The

second count charged him with "kicking and slapping her body" on January 30, 1982.

Defendant claims that these charges are barred on double jeopardy grounds, because the court had previously dismissed charges that he had "caused bruises and abrasions by striking [his wife] with a spiked dog collar and a hammer" on January 31, 1982.

■ ■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, *Benton* v. *Maryland*, 395 U.S. 784 (1969), "protects against a second prosecution for the same offense after acquittal." *Brown* v. *Ohio*, 432 U.S. 161, 165 (1977). However, defendant's claim fails this test because the instant case involved entirely different offenses which, although alleged to have been inflicted upon the same victim, involved different acts on different days.[1]

Defendant points out that the new charges against him were filed with an affidavit that was substantially identical to the one filed in the earlier case. He argues that the affidavit in the January 31 "dog collar" assault case, reciting the January 29 "paring knife" and January 30 "kicking and slapping" assaults, had forced him to prepare a defense in the first case against charges of all three assaults. He contends that rulings in three Vermont cases, *State* v. *Phillips*, 142 Vt. 283, 455 A.2d 325 (1982); *State* v. *Burclaff*, 138 Vt. 461, 418 A.2d 38 (1980); *State* v. *Christman*, 135 Vt. 59, 370 A.2d 624 (1977), required him to rely upon the entire

---

[1] Defendant also cited the Vermont Constitution, Chapter I, Article 10. This Court has previously declined to imply a double jeopardy provision therein. *State* v. *O'Brien*, 106 Vt. 97, 105-06, 170 A. 98, 101 (1934) (citing *State* v. *Felch*, 92 Vt. 477, 484, 105 A. 23, 26 (1918)). Defendant did not refer to 13 V.S.A. § 6556 (statutory bar to subsequent prosecution for same offense after an acquittal on the merits), or to Vermont common law, nor did he assert that Vermont's protection is broader than the Fifth Amendment. See, e.g., *State* v. *Parker*, 123 Vt. 369, 371, 189 A.2d 540, 541 (1963) (double jeopardy prohibition applies to same offense rather than same act); *State* v. *Pianfetti*, 79 Vt. 236, 246, 65 A. 84, 86 (1906) ("a conviction or acquittal only bars such offences as were put in issue on the former trial"); *State* v. *Lincoln*, 50 Vt. 644, 647 (1878) (aspect of first case to be barred must be "a *necessary* element in, and . . . an essential part of" the second case). We have previously reviewed double jeopardy claims under the standards set forth by the United States Supreme Court under the Double Jeopardy Clause of the Fifth Amendment. *In re Dunkerley*, 135 Vt. 260, 263, 376 A.2d 43, 46 (1977). In the absence of a more adequate delineation by defendant as to how his claims fall under the Vermont Constitution, we decline to review his claims thereunder.

affidavit in determining the scope of the charges against him. We disagree.

▮ In two of the cases cited, *Burclaff, supra,* and *Christman, supra,* this Court observed that use of an affidavit to cure minimal defects in informations did not violate federal or state constitutional requirements that a defendant be informed of the nature of the charge with sufficient particularity to permit preparation of his defense. In *State* v. *Phillips, supra,* 142 Vt. at 289-90, 455 A.2d at 328-29, the information had merely recited statutory language without identifying which facts, in an affidavit containing a "morass" of factual assertions, comprised the violations; this ambiguity required defendant to "sort out" at her peril the acts that supported the alleged crimes. These cases do not support defendant's claim of double jeopardy. The information in defendant's earlier trial specified the January 31 "dog collar" assault. That information was neither ambiguous nor technically flawed, and it permitted defendant to determine exactly the specific charge against him—a charge that was distinct from both of the charges filed in the second case.

Defendant also argues for collateral estoppel of identical issues litigated and lost by the State in the first case. He claims that, because the court dismissed the first case after concluding that the identify of defendant as the assailant was not sufficiently shown, the State was estopped to identify defendant as the assailant in the second case. We again disagree.

▮ For an issue of fact or law to be conclusive in a subsequent action, the same essential issue must have been litigated and determined in the first judgment. C. Wright, Federal Courts § 100A, at 682 (4th ed. 1983). Although both cases alleged assaults by defendant upon his wife, different dates and acts were involved, and there was no identity of issues suitable for preclusion.

## II.

Defendant next argues that several incidents during the trial show that the prosecutor intentionally "salted" the trial with prejudicial material.

▮ Two of the incidents about which defendant complains were not objected to below: one concerned an answer given by a witness describing her observations of certain injuries to defendant's wife; the other, remarks made by the prosecutor in closing

argument, allegedly implying a continuing course of misconduct on the part of defendant. We will not review claims raised initially on appeal unless they amount to plain error. V.R.Cr.P. 52(b). We have frequently stated that plain error will be found only in a rare and extraordinary case where the error is an obvious one and so grave and serious as to strike at the very heart of a defendant's constitutional rights or adversely to affect the fair administration of justice. E.g., *State* v. *Mecier*, 145 Vt. 173, 178, 488 A.2d 737, 741 (1984); *State* v. *Anderkin*, 145 Vt. 240, 245, 487 A.2d 142, 144 (1984). The incidents referred to above were not of this caliber and do not rise to the level of plain error; thus we will not address them.

Defendant also objects to a line of questioning addressed by the prosecutor to a defense witness on cross-examination, suggesting that the witness and defendant shared a philosophy regarding the victim's duty to "obey." Defendant claims the questions implied a continuing course of misconduct by defendant. The State contends that these questions were designed to impeach the witness, who had denied seeing any attack by defendant, although the victim had testified that the witness had sat and watched.

At trial, defendant justified his objection only upon the ground that the questions on cross-examination exceeded the scope of direct examination. V.R.E. 611(b). The trial court, having been given no opportunity to rule upon defendant's "continuing-course-of-misconduct" objection, allowed the witness's denial that he shared defendant's "philosophy" to stand, and the testimony then turned to other issues. We find no error. Defendant's objection, properly resolved on one ground, does not preserve its claim on appeal on new grounds. *State* v. *Bissonette*, 145 Vt. 381, 392, 488 A.2d 1231, 1237-38 (1985); V.R.E. 103(a) (1).

Defendant also complains about a question from the prosecutor after defendant had testified that he had never seen his wife injured. On cross-examination the prosecutor asked if he had never seen her with a black eye. The court sustained defendant's objection to this question, refusing to "let the State in the back door with prior uncharged incidents." Defendant's attorney had previously discussed with the court the need to avoid reference to any other assaults by defendant, and the court had instructed both counsel to this effect.

At a post-trial hearing, the court evaluated defendant's motion for a new trial in light of *State* v. *Goshea*, 137 Vt. 69, 76, 398 A.2d

289, 294 (1979) (reversing conviction because prosecutor suppressed exculpatory evidence, then stressed its absence during closing argument), and *State* v. *Lapham,* 135 Vt. 393, 406-08, 377 A.2d 249, 257-58 (1977) (reversal based partly upon prosecutor's "studied purpose to arouse the prejudices of the jury"). The court concluded that insufficient evidence of prejudice had been shown and denied defendant's motion for new trial.

■ Defendant claims that the prosecutor's conduct, as a whole, deprived him of a fair trial. Our function on appeal is to determine whether the trial court abused its discretion in denying defendant's motion for a new trial. *State* v. *Dezaine,* 141 Vt. 335, 338, 449 A.2d 913, 914 (1982). Absent a showing that discretion was abused or its exercise unreasonably withheld, this Court will not reverse. *State* v. *LeBeau,* 144 Vt. 315, 319, 476 A.2d 128, 130 (1984).

Defendant asserts that prejudice was shown by the fact that he was convicted. He claims that, had only properly admitted evidence been considered by the jury in weighing the credibility of the witnesses, he would have been acquitted.

■ As this Court has stated on two prior occasions, *Goshea, supra,* 137 Vt. at 76, 398 A.2d at 294, and *Lapham, supra,* 135 Vt. at 406, 377 A.2d at 257, a high standard of conduct is expected of the prosecutor as the government's servant of the law. The trial court, in applying these authorities, declined to reverse. In our review of the record, we are not persuaded that the court erred in failing to find that the prosecutor had a "studied purpose" to arouse unfair prejudice. Nor are we persuaded that the court erred in failing to find the remarks so unfairly prejudicial as to require a new trial. Defendant has failed to carry his burden to demonstrate that the court abused its discretion.

### III.

Defendant's final argument is that the court erred in refusing his request to expunge two statements from the presentence investigation report (hereafter, PSI), which was prepared by the Corrections Department pursuant to V.R.Cr.P. 32(c). Defendant claims admission of the statements violated the rule in *State* v. *Williams, supra,* 137 Vt. at 364, 406 A.2d at 377, prohibiting "the use of mere assertions of criminal activities in any way in aid of determining disposition."

## A.

The first statement in the PSI (involving the facts alleged in the case previously dismissed) came from defendant's own mouth:

> If I hit her with a spiked dog collar—you can't even buy them—look at me . . . . I'd have ripped her flesh off. A knife? Let's not be ridiculous. A hammer, my God, she would have been in the hospital. Can you believe that all these things happened and all the hospital did was give her aspirin and release her.

The second statement quoted defendant's wife (now living in another state), explaining why she had stopped seeking counseling before the assault: "My problem is that my husband will hurt me if he knows I'm getting help." (This, too, implied that other assaults had occurred.)

Before the sentencing hearing, defendant moved, before a different judge, for exclusion of the two statements, claiming that right as a matter of law. The judge twice offered a presentence *evidentiary* hearing on admissibility, citing V.R.Cr.P. 32(c)(4), and explaining, "the presentence report is not to be a rendition of the positive aspects of the defendant. It's suppose[d] to be a full, bald picture." Defendant rejected the offers, arguing, "I don't think I should have to contest it. I think I should be able to have it removed." When the judge denied the motion to expunge, defendant chose to proceed directly with sentencing and to raise any objections therein.

In pronouncing sentence, the sentencing court stated, *"over a period of some time* [the victim] has had very little liberty or freedom. What I see here is a bully who *over a period of time*, used a pattern of physical force with the intention of creating fear for the purpose of controlling another person." (Emphasis supplied.) Defendant argues that the references to behavior over a period of time show that the sentencing court relied upon the two statements—unproven assertions of prior assaults.

## B.

Before evaluating defendant's argument, we review the goals of sentencing, and defendant's constitutional rights in the sentencing process, in order to identify the sentencing procedures that

"basic concerns of criminal justice compel." *Williams, supra*, 137 Vt. at 364, 406 A.2d at 377.

■ Under V.R.Cr.P. 32(c)(1), the Corrections Department conducts a presentence investigation and prepares a PSI. The purpose of the PSI is "to give to the sentencing judge the fullest possible information concerning the defendant's life and characteristics so that he may be able to impose an appropriate sentence." *United States* v. *Burton*, 631 F.2d 280, 282 (4th Cir. 1980); accord *Gregg* v. *United States*, 394 U.S. 489, 492 (1969) (PSI should help the judge impose "a sentence suited to his particular character and potential for rehabilitation"). "The knowledge of the life of a man, his background, his family, his past conduct, record and inclinations, is the only proper basis for the determination as to his sentence or treatment." *In re Morrill*, 129 Vt. 460, 465, 282 A.2d 811, 815 (1971).

■ A defendant has a constitutional right that he not be sentenced on the basis of materially untrue information. *Townsend* v. *Burke*, 334 U.S. 736, 741 (1948); *State* v. *Chambers*, 144 Vt. 377, 383, 477 A.2d 974, 979 (1984). Factual reliability is sought through a process of disclosure and opportunity to rebut. See *Orner* v. *United States*, 578 F.2d 1276 (8th Cir. 1978); *Shelton* v. *United States*, 497 F.2d 156, 160 (5th Cir. 1974) (defendant must have opportunity to rebut information explicitly relied upon); III ABA Standards for Criminal Justice § 18-5.4 (a), (b) (hereafter, ABA Standards) ("Fundamental fairness . . . requires" broad disclosure of all derogatory information "in a form sufficient to give an adequate opportunity for rebuttal," including inspection of the full PSI). At the time of sentencing, either party may offer evidence on any disputed factual issues in open court with full rights of cross-examination, confrontation, and representation by counsel. V.R.Cr.P. 32(c)(4).

V.R.Cr.P. 32(c)(3) requires that the PSI be available for inspection at least seven days prior to sentencing and requires disclosure by the court to all parties of any other information submitted for consideration at sentencing, sufficiently in advance to afford a reasonable opportunity to rebut information to be presented. See *In re Sevene*, 136 Vt. 602, 396 A.2d 1390 (1979) (error for court reviewing sentence to dismiss petitioner's claims of PSI inaccuracies where petitioner had been given no access to PSI until weeks after sentencing).

Although V.R.Cr.P. 32 closely resembles its federal counterpart, in practice federal courts consider a wider range of information at sentencing than has Vermont since this Court's decision in *State v. Williams, supra*.[2] F.R.Cr.P. 32(c)(3)(D) protects defendant's reliability and rebuttal rights by providing that, if the defendant challenges an allegation in the PSI, "the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Compare *State v. Rathburn*, 140 Vt. 382, 388, 442 A.2d 452, 455 (1981) (barring *Williams* claim where judge stated he would not rely on statements).

 Thus, in sentencing, "the court may consider unsworn information from a variety of sources, including the [PSI] and in-court or out-of-court statements. . . ." V.R.Cr.P. 32, Reporter's Notes—1980 Amendment; accord *Williams* v. *New York*, 337 U.S. 241, 247 (1949) ("modern concepts individualizing punishment" to fit the offender necessitate rejection of "rigid adherence to restrictive rules of evidence"). On appeal, defendant bears the burden to show that materially inaccurate information was relied upon by the sentencing court. *Chambers, supra*, 144 Vt. at 384, 477 A.2d at 979 (citing *United States* v. *Garcia*, 693 F.2d 412, 416 (5th Cir. 1982)). But see *United States* v. *Fatico*, 579 F.2d 707, 712-13 (2d Cir. 1978) (significant chance of falsity may place burden on the prosecution to verify information in PSI), *cert. denied*, 440 U.S. 910 (1979), *cert. denied*, 444 U.S. 1073 (1980).

---

[2] See, e.g., *Billiteri* v. *United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976) (evidence of crimes of which defendant was acquitted); *Houle* v. *United States*, 493 F.2d 915, 915 (5th Cir. 1974) (pending unrelated arrest); *United States* v. *Atkins*, 480 F.2d 1223, 1224 (9th Cir. 1973) (evidence of uncharged crimes unless unconstitutionally obtained); *Jones* v. *United States*, 113 U.S. App. D.C. 233, 235, 307 F.2d 190, 192 (D.C. Cir. 1962) (unconvicted prior charges, if reported in PSI), *cert. denied*, 372 U.S. 919 (1963); see also *United States* v. *Tucker*, 404 U.S. 443, 446 (1972) (convictions obtained without right to counsel not considered, although underlying "criminal anti-social conduct" may be); *Snowden* v. *Smith*, 413 F.2d 94 (7th Cir. 1969) (judge may have *duty* to consider other admitted offenses); *United States* v. *Doyle*, 348 F.2d 715, 720 (2d Cir.) (other untried counts), *cert. denied*, 382 U.S. 843 (1965); *United States* v. *Battle*, 523 F. Supp. 855, 862 (S.D. Ohio 1981) (habitual misconduct, whether or not it resulted in conviction).

## C.

In light of these fundamental concerns, we turn to the rule in *State* v. *Williams, supra.* In *Williams* the defendant objected to the sentencing court's consideration of hearsay information about criminal acts for which he had not been charged, tried or convicted. *Id.,* 137 Vt. at 364, 406 A.2d at 377. This Court held, "the basic concerns of criminal justice compel us to prohibit . . . the use of mere assertions of criminal activities in any way in aid of determining disposition," *id.,* and it ordered resentencing "without the presentation of claim[s] of criminal acts never validated by judgment of conviction." *Id.* at 365, 406 A.2d at 377.

Examination of each authority cited by *Williams* convinces us that none supports such a broad exclusionary rule. Both *Dunn* v. *United States,* 442 U.S. 100, 107 (1979), and *Cole* v. *Arkansas,* 333 U.S. 196, 201 (1948), simply reversed appellate affirmances that were based on alleged violations entirely different from those relied on to convict at trial; *Bristol* v. *Schwolow,* 122 Vt. 311, 313, 170 A.2d 639, 640 (1961), found deprivation of due process by issuance of a civil judgment "without hearing or opportunity to present evidence." Finally, and most significantly, the Draft ABA Minimum Standards on Probation, cited in *Williams,* proposed that only criminal charges on which convictions were entered be included in the *"prior criminal record"* section of the PSI.[3] The Draft Probation Standards urged omission, *from that section only,* of references to mere arrests and juvenile dispositions, to ensure that arrests were not mistaken for convictions, because arrest records are not considered a reliable basis for individual sentencing.[4] Neither the draft Probation Standards considered by

---

[3] V.R.Cr.P. 32(c)(2) provides: "The [PSI] shall contain any *prior criminal record* of the defendant and such information on his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court." (Emphasis supplied.)

[4] The ABA Standards, *supra,* § 18-5.1, Commentary at 18-351, opposed consideration of arrest data at sentencing because many arrests do not result in conviction; some are made without intent to prosecute; arrest data is often unreliable; and statistical analyses have shown racial bias in raw arrest data. However, the Commentary continued:

> The position taken by these standards should not be overread. It is not asserted that law enforcement data regarding conduct not resulting in conviction should never be considered at sentencing. On the contrary, it is as-

the Court in *Williams*, nor the present ABA Standards for Criminal Justice, which subsumed that draft, suggested exclusion of *factual* information describing conduct, whether charged or not. If "claim[s] of criminal acts never validated by judgment of conviction," *Williams, supra*, 137 Vt. at 365, 406 A.2d at 377, means *arrest records*, then we agree that such information does not belong in the "prior criminal record" portion of the PSI. V.R.Cr.P. 32(c)(2). However, when "mere assertions of criminal activities," *id.* at 364, 406 A.2d at 377, are in fact supported by *factual information*, then the evidence should be considered by the sentencing court, after timely disclosure and an opportunity to rebut.[5]

We hold, therefore, that sentencing must be based on reliable factual information, with full disclosure sufficiently in advance of sentencing to allow an adequate opportunity for rebuttal. Evidence of other criminal acts by defendant, and any other information, is admissible if it satisfies the standards of V.R.Cr.P.

sumed that verifiable allegations to the effect, for example, that the offender is involved in organized crime or has made a living from the criminal conduct that resulted in conviction should be included in the report. The important distinction here is that such information must be factual and verified. . . .When it is effectively challenged by the defendant, . . . the government [must] establish the charge by the preponderance of the evidence. In contrast, arrest data typically consist of naked labels without surrounding factual specificity. As such they generally cannot be verified (except through the offender), and the effort necessary to prove the underlying facts would be disproportionate to the value of the information thereby communicated to the court. The premise of these standards is that allegations of prior criminal conduct concerning the offender should either be supportable or they should not be made. Arrest data flunk this test.
ABA Standard § 18-5.1, Commentary at 18-352.

[5] The printed case and briefs in *Williams* disclose that the "hearsay information objected to" was the *prosecutor's* surprise announcement at the sentencing hearing—not mentioned in the PSI provided before the hearing—that police believed defendant had engaged in criminally deviant acts with many young boys. The second-hand allegations of criminality were unsupported by factual details. Having been given no adequate opportunity to investigate and rebut, defendant was expected, immediately, to disprove the generalities. Compare *United States v. Read*, 534 F.2d 858, 859 (9th Cir. 1976) (sentence vacated where the trial court had relied on police allegations of defendant's engagement in "criminal activity of a severe kind" but had not revealed the information in order to allow defendant to identify who said so or the factual basis of those allegations); *United States v. Huff*, 512 F.2d 66, 71 (5th Cir. 1975) (sentence vacated because the court had relied upon an undisclosed prosecution sentencing memo; this "deprived the defendant of his fundamental due process right to hear and rebut all that the prosecution has to say about him . . . .").

32(c)(2)—that is, if it is factual and helpful, or otherwise permitted (see, e.g., 13 V.S.A. § 7006 (victim's right to testify at sentencing proceedings)), and is not excluded by constitutional limitations, e.g., *State* v. *Chambers, supra,* 144 Vt. at 383, 477 A.2d at 979 (citing *Townsend* v. *Burke, supra,* 334 U.S. at 741 (right not to be sentenced on materially untrue information)).

### D.

Addressing the two statements in the PSI challenged by defendant as violative of *Williams,* it is obvious that the first, quoting defendant himself, should not be expunged because the statement was not hearsay. V.R.E. 801(d)(2)(A). Cf. *State* v. *Rice,* 145 Vt. 25, 31, 483 A.2d 248, 252 (1984) (in-court testimony by victims, at sentencing, did not violate *Williams* because it was not impermisible hearsay). The court expressly offered to hold an evidentiary hearing, at which defendant could have denied that he made the statement, explained it, or challenged its relevance or its distorted use. Having failed to avail himself of the opportunity to correct claimed defects in the PSI, defendant cannot now claim error. *State* v. *Chambers, supra,* 144 Vt. at 384, 477 A.2d at 979; accord *United States* v. *Plisek,* 657 F.2d 920, 924-25 (7th Cir. 1981).

The second statement, quoting the victim and implying that the victim had been abused by him on earlier occasions, was of a factual, informational nature. Unlike *Williams* and *State* v. *Neale,* 145 Vt. 423, 436, 491 A.2d 1025, 1033 (1985), it appeared in a PSI that was made available well before sentencing, and defendant never claimed that he had not been given sufficient time to investigate the allegations. Although offered a chance to rebut, defendant declined directly to challenge the accuracy of the evidence. Further, the evidence clearly helped the sentencing court formulate an appropriate rehabilitative sentence.

By offering defendant in this case an evidentiary hearing, the court fulfilled the due process standards afforded under V.R. Cr.P. 32, and it satisfied the purposes of *Williams.* Defendant's insistence upon exclusion of factual information, as a matter of law, while declining the court's offer of an evidentiary hearing, was unjustified.

*Affirmed.*

**Underwood, J.,** concurring. In my opinion the facts of this case compel us to resolve the third issue raised by defendant's appeal by applying the limited exception to the *Williams'** rule that we recently enunciated in *State* v. *Rice,* 145 Vt. 25, 31, 483 A.2d 248, 251-52 (1984). Therefore I concur only in the result reached in the majority opinion.

---

\* *State* v. *Williams,* 137 Vt. 360, 364, 406 A.2d 375, 377 (1979), *cert. denied,* 444 U.S. 1048 (1980).