*Bank of America v. Mohamed*, No. 690-8-18 Cncv (Toor, J., July 19, 2019).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Chittenden Unit | CIVIL DIVISION<br>Docket No. 690-8-18 Cncv |

| | |
|---|---|
| Bank of America, N.A,<br>    Plaintiff<br><br>v.<br><br>Ragab Mohamed,<br>    Defendant | |

## RULING ON THE MERITS

This is a credit card collections case. The case was tried to the court on April 25, 2019. Jeanine Dumont and Michael Williams represent plaintiff Bank of America (the Bank); Jean Murray represents defendant Ragab Mohamed (Mohamed). Post-trial memos were complete May 30.

### Discussion

The legal issue in this case is whether the records proffered in evidence by the Bank are properly admitted as business records.[1] The business record exception requires proof that the records were (1) made at or near the time of the transaction, (2) by or from information transmitted by a person with knowledge, (3) kept in the regular course of a regularly conducted business activity, and (4) part of the business' regular practice of recordkeeping. V.R.E. 803(6). Even if these criteria are established, the record is not admissible if "the source of the information or the method or circumstances of preparation indicate lack of trustworthiness." Id.

---

[1] The court admitted the records conditionally, so that the parties could brief the evidentiary issue.

Mohamed does not admit having an account with the Bank or owing anything to the Bank. The Bank's claims are based entirely on documents: credit card statements and a copy of a check, all printed from the Bank's electronic records system. Mohamed argues that there is not an adequate foundation for their admission. Specifically, he argues that the only witness at trial, a bank employee by the name of Pamela Ritter, was not an adequate witness to establish the exception. "The qualification of the witness and the sufficiency of [her] testimony are to be determined by the trial court in the exercise of its discretion in light of the sources of information, and the time and method of its preparation." Westinghouse Electric Supply Co. v. B.L. Allen, 138 Vt. 84, 99 (1980).

The problem before the court is one arising from the computerization of everything these days. Instead of a bookkeeper who herself records charges and payments for a small business, and can testify to how and when she makes the entries, the witness here is essentially a professional witness who testifies when there is litigation. Her role is to pull records from the computer and testify that they are the records in the electronic system. She has no personal knowledge of the inner workings of the computer system or how accurate they are. She has no personal knowledge of how the charges are conveyed to the system from a store or how accurate those transmissions are. She has no personal knowledge of the transactions themselves. Her testimony was essentially that she can verify that the paper copies of the exhibits are the same as what shows up in the Bank's electronic system; that she knows charges are automatically transmitted to the system; that the system is password protected; that statements are generated monthly; that they show charges and payments; and that she has had training to show her how statements are generated. While she testified to the details of this account, her testimony was entirely from review of the electronic records, not through having handled the account herself.

2

The question is how businesses that rely almost entirely on electronic records rather than human interactions are to properly establish the business records exception. It is a reality that the business world has to a great extent moved in this direction—the court system itself is headed down that same path at this very moment—and the courts must continue to function in the modern world. "[I]t is the purpose of the [business records exception] to provide relief from rigid common law rules on the admissibility of business records. . ." Westinghouse, 133 Vt. at 99; *see also* State v. Burclaff, 138 Vt. 461, 467 (1980)("the stringent common law rule that all participants in the document production process must be called as witnesses has been abandoned"). However, it is also incumbent upon companies choosing to do business in this fashion to create appropriate processes for establishing the reliability of their records in court.

The Court in Westinghouse stated that even when the witness "is unfamiliar with the physical operation of the computerized information storage and computation process, but has a general understanding of the accounting procedures *and personal familiarity with the account*," the evidence should be admitted unless there are other reasons to question its reliability. Id. at 101 (emphasis added). The problem here is that the witness lacks any personal familiarity with the account. Her knowledge stems entirely from logging into the electronic system and printing out what she saw. She never talked to Mohamed; she is not the person who opened his account, or handled his alleged fraud report, or allegedly issued a new card number because of a concern about fraud. No contract with Defendant's signature on it has been presented. No evidence was presented that someone else within the Bank has a duty to assure the accuracy of the records or to "observe the matter recorded." Burclaff, 138 Vt. at 461.

Nor was any evidence presented as to the overall accuracy of the Bank's records. Surely they have done studies to determine how often errors are reported by customers, how often fake charges appear on statements, how often numbers are transposed, how often similar names or account numbers are confused, and the like. For example, in Burclaff the proponent of the records testified that "there were a number of checks built into the system" and that she "was required to compare the information" on the records with other documents to assure its accuracy. Id.

What the court is left with here is essentially testimony that because information is in the Bank's electronic records, it must be true. That cannot be all that is required to establish reliability. The "ever-expanding complexity of the cyberworld has prompted the authors of the current version of the *Manual for Complex Litigation* to note that a judge should 'consider the accuracy and reliability of computerized evidence' and that a 'proponent of computerized evidence has the burden of laying a proper foundation by establishing its accuracy.'" In re Vee Vinhnee, 336 B.R. 437, 445 (B.A.P. 9th Cir. 2005), quoting Manual For Complex Litigation (Fourth) § 11.446 (2004); *see also*, Midland Funding, LLC v. Mitchell-James, 137 A.3d 1, 7 (Conn. App. 2016) ("In view of the complex nature of the operation of computers and general lay unfamiliarity with their operation, courts have been cautioned to take special care to be certain that the foundation is sufficient to warrant a finding of trustworthiness. . . ")(citation omitted); 5 Federal Evidence § 9:20 (4th ed.) ("When evidence has been generated or collected by means of a process or system of some sort, its probative worth depends upon the validity of the underlying method."). [2]

---

[2] "We note that '[r]eliability problems may arise through or in: (1) the underlying information itself; (2) entering the information into the computer; (3) the computer hardware; (4) the computer software (the programs or instructions that tell the computer what to do); (5) the execution of the instructions, which

Thus, "the proponent of the computer generated business records must establish that the basic elements of the computer system are reliable." Midland Funding, 137 A.3d at 7 (internal quotation omitted). "When computer information is at issue, there must be competent admissible evidence about the computer hardware and software to show that what is presented is really accurate." Supermedia LLC v. Law Firm of Asherson, No. CV 12-3834 JAK (RZX), 2013 WL 12113386, at *1 (C.D. Cal. Feb. 13, 2013). Many courts, therefore, "have required testimony by a person with some degree of computer expertise, who has sufficient knowledge to be examined and cross-examined about the functioning of the computer." Am. Oil Co. v. Valenti, 426 A.2d 305, 310 (Conn. 1979). One court has declared that computer-generated records require, inter alia, "a showing that standard equipment was used; the particular computer generates accurate records when used appropriately; [and that] the computer was used appropriately. " People v. Morrow, 628 N.E.2d 550, 554 (Ill. App. 3d 1993).[3]

Here, there is insufficient evidence to establish the reliability of the electronic system used by the Bank to open and maintain accounts, to process charges, to check for accuracy, or to create the paper records. The witness herself had no ability to confirm the

---

transforms the information in some way—for example, by calculating numbers, sorting names, or storing information and retrieving it later; (6) the output (the information as produced by the computer in a useful form, such as a printout of tax return information, a transcript of a recorded conversation, or an animated graphics simulation); (7) the security system that is used to control access to the computer; and (8) user errors, which may arise at any stage.'" State v. Swinton, 847 A.2d 921, 942–43 (Conn. 2004), quoting R. Garcia, 'Garbage In, Gospel Out': Criminal Discovery, Computer Reliability, and the Constitution,' 38 UCLA L. Rev. 1043, 1073 (1991).

[3] One treatise explains: "At least five factors have been examined in determining whether the method and circumstances from which the computer printout was made demonstrate sufficient accuracy and reliability to justify admission. These factors include: (1) the competency of the operators; (2) the type of computer used and its acceptance in the field as standard and efficient equipment; (3) the procedures used for generating input and output, including the controls, tests and checks for accuracy and reliability; (4) the mechanical operations of the computer; and (5) the meaning and identity of the records themselves." Guide to Computer Law P 16195 (CCH), 2015 WL 6987376.

reliability of any of the records based upon personal knowledge of Mohamed or specific transactions on his alleged account. The court therefore finds the records do not satisfy the requirements of the business records rule and are inadmissible.

Plaintiff also argues that it is entitled to recover on a theory of "account stated." However, that theory also relies upon the same records that the court has held inadmissible.

Order

Judgment will be entered in favor of defendant Mohamed.

Dated at Burlington this 17th day of  July, 2019.

_____
Helen M. Toor
Superior Court Judge